Nathan Skipper, Appellee-Petitioner,

*v.*

Great Central Insurance Company,
Appellee-Defendant,

and

Charles E. Worley, in his capacity as Treasurer of the
State of Tennessee, and as Custodian of the Second
Injury Fund, Appellant-Defendant.

474 S.W.2d 420

(*Knoxville,* September Term, 1971.)

Opinion filed December 6, 1971.

NORBERT J. SLOVIS, Knoxville (LOCKETT, SLOVIJ & WEAVER, Knoxville, of counsel), for appellee-petitioner.

STUART F. DYE, Knoxville (KRAMER, DYE, GREENWOOD, JOHNSON, RAYSON & McVEIGH, Knoxville, of counsel), for appellee-defendant.

DAVID M. PACK, Attorney General, C. HAYES COONEY, Assistant Attorney General, for appellant-defendant.

Mr. Chief Justice Dyer delivered the opinion of the Court.

This is an appeal by Charles E. Worley, Treasurer of the State of Tennessee, and Custodian of the Second Injury Fund, pursuant to T.C.A. sec. 50-1027, from a judgment awarding Nathan Skipper, designated herein as employee, benefits payable out of said Fund.

Employee, male, age 37, attained a 9th grade education. At the age of eleven months employee contracted poliomyelitis, resulting in the following permanent physical weaknesses: marked muscle weaknesses in both feet and legs; deformity of the left foot and heel, claw toes on both feet with weak dorsiflexors of both ankles and a drop foot gait bilaterally; a waddling gait necessary in order to clear the floor during the swing through. At about the age of twenty-seven, employee suffered a permanent injury to his right eye when a battery exploded, leaving little vision in this eye.

Employee with these handicaps had for the past twelve or so years worked in various grocery stores, handling stock, operating the cash register, and helping in the meat department. On June 1, 1970, while employed by

the Thirteenth Street Grocery he got his left hand caught in a conveyor belt, which injury required amputation of some of the fingers on the hand. As a result of his injury employee brought this suit against Great Central Insurance Company, the insurance carrier for his employer, and Charles E. Worley, in his capacity as Custodian of the Second Injury Fund. Employee sought benefits from Great Central Insurance Company for one hundred per cent loss of use of his left hand and benefits from the Second Injury Fund on the basis he was now totally and permanently disabled.

The chancellor awarded employee benefits based on fifty per cent permanent partial loss of use of the left hand in the amount of $3,379.05, payable by the Great Central Insurance Company. The chancellor finding employee was now totally and permanently disabled, awarded employee the remaining benefits due for such disability, the commuted amount being $11,948.42, payable from the Second Injury Fund. Charles E. Worley, as Custodian of the Second Injury Fund, appealed, assigning one error as follows:

That the trial court erred in awarding a recovery from the Second Injury Fund on the ground that there is no material evidence to support the trial court's finding that the Petitioner is permanently and totally incapacitated as required under T.C.A. sec. 50-1027.

Employee described the manner in which he was able to work in his handicapped condition prior to the injury to his left hand. Employee returned to work about October 21, 1970, for the same employer and described how his work after the injury to his hand by the use of his right hand and the heel of his left hand. Employee stated

his work after the injury to his left hand was more difficult than before, and in its use he suffered pain.

John Valentine, an employee of the Tennessee Department of Employment Security for 16 years, with the duty of obtaining employment for applicants, testified as follows: That he would not consider employee to be unemployable, but that a person of employee's education, abilities and infirmities would be very difficult to place.

Dr. John H. Bell, an orthopedic surgeon, stated employee "has a total permanent medical impairment at the present time of approximately fifty per cent to the body as a whole." Dr. Bell also stated in view of employee's physical condition and education, he "can be expected to have extreme difficulty in obtaining employment in occupations he is able to handle."

Mr. Earl Davis, owner of the Thirteenth Street Grocery, testified employee had been working for him for about three years, operating the cash register and looking after stock; that when employee returned to work after the injury he was assigned the same duties, but in the use of his left hand he had slowed down; that he paid employee the same wages by the hour after the injury as he had paid him before the injury.

The custodian of the Second Injury Fund argues under the definition of permanent total disability set out in T.C.A. sec. 50-1007(e), employee is not permanently and totally disabled as required by T.C.A. sec. 50-1027, since it is conclusively shown employee after the injury to his left hand returned to work in the same type of employment and at the same wages as he had prior to his injury.

The pertinent part of T.C.A. sec. 50-1007(e), defining permanent total disability reads as follows:

When an injury . . . totally incapacitates the employee from working at an occupation which brings him an income, such employee shall be considered "totally disabled".

The controling issue here is whether the fact employee after the injury to his left hand returned to work in the same type of employment, at the same wages, per se, precludes a finding by the court that employee is totally disabled as these words are used in T.C.A. sec. 50-1007(e).

On this issue the trial judge reasons as follows:

In my opinion this man will never be back in Court again, and this is his last crack, because I think he is totally disabled as far as the labor market is concerned, and that's what the courts look to. I don't know that he falls in the odd-lot classification referred to in Larson, because he does have some skills. He has worked in a grocery store for thirteen and one-half years, but whether he falls within that or within a grocery store employee, in either event the expert who has been in this field for sixteen years says that he doubts that he could find employment for him as an odd-lot man or as a grocery store employee. I put the question as bluntly to him as I knew how, that if his present employer, Mr. Davis, who testified here, no longer had the opportunity to employ him and Mr. Skipper came in to get employment, could he place him, and he said he doubted it very seriously. It confirms the Court's view on the matter, and I do find that he is unemployable. He is to be commended for the fact

that he has not been supported by the Government up to this point, but that he has made a strenuous effort successfully to support himself and his wife and family by her prior marriage. But in the state of his hand as it now is and all of his combined conditions, it is the Court's opinion that he could not obtain employment elsewhere.

I have studied the medical reports and looked at the man's hand and heard his testimony as to its usefulness or lack thereof, the pain that he suffers in two of his fingers when they come in contact with anything. . . .

At the threshold we should note we treat the rating given employee of fifty per cent permanent total disability to the body as a whole by Dr. Bell as a clinical or medical percentage. Dr. Bell meant this percentage to be such as clearly shown by the use of his words "medical impairment" and his observation that employee would find it extremely difficult to obtain employment. The difference between medical disability and disability within the meaning of the workmen's compensation statute is clearly expressed by Mr. Justice Creson in *Federated Mutual I & H Insurance Co. v. Cameron*, 220 Tenn. 636, 422 S.W.2d 427 (1967), in the following language:

This Court recognizes that there are differences between the medical and the legal meaning of disability under the Workmen's Compensation statutes. Chief Justice Burnett, in *Lunsford v. A. C. Lawrence Leather Co.* (1949) 189 Tenn. 293, 225 S.W.2d 66, and the late Justice White, in *McKenzie v. Campbell & Dann Mfg. Co.* (1962) 209 Tenn. 475, 354 S.W.2d 440, have ably delineated the variance. The measures of disability,

in a medical sense, are substantially more narrow than those contemplated by the Workmen's Compensation statutes. In determining what may constitute permanent total disability, the concepts embodied in Workmen's Compensation take into account many pertinent factors, including skill, education, training, duration and job opportunity for the disabled.

While not directly in point, the reasoning of the Court in *Greeneville Cabinet Co. v. Ramsey,* 195 Tenn. 409, 260 S.W.2d 157 (1953), is persuasive in the decision in the case at bar. In *Ramsey* the Court was considering the language of the last paragraph of Subsection (c) of T.C.A. sec. 50-1007, as it read prior to amendment by Chapter 111, Public Acts of 1953. Under this statute at the time certain cases of permanent partial disability were compensated on the basis of "the difference between [the wage of the workman] at the time of the injury, and the wage 'he is able to earn in his partially disabled condition'."

In *Ramsey,* the employee did return to work after the injury for the same employer, in the same type of employment, and for the same or better wages. This being true, it was insisted under the statute in effect at the time employee was not entitled to any compensation. The Court, finding the words of the statute "is able to earn" were not synonymous with "is earning", held the employee was not precluded from receiving benefits solely on the ground the employee is earning as much after the accident as he was before. The Court stated the test to be followed in the following language:

The question is whether, in the open labor market, in his disabled condition, the employee, after the injury,

is able to earn in spite of his disability, as much as he was able to earn before the injury. 195 Tenn. at 416, 260 S.W.2d at 159.

■ We hold the fact employee is employed after the injury in the same type of employment and at the same wages does not per se preclude the court from finding he is totally disabled as the words are used in T.C.A. sec. 50-1007(e). To hold otherwise would have the result of discouraging those few hardy individuals who try to work under great physical handicap, by the threat of denying them compensation which they might otherwise be entitled to if they did not work. We do not think it was the intent of the Legislature that the Workmen's Compensation Statutes be so construed.

■ In determining permanent total disability as such is defined in T.C.A. sec. 50-1007(e), this fact of employment after injury is a factor to be considered along with all other factors involved when applying the test, which is whether employee, in light of his education, abilities, physical and/or mental infirmities, is employable in the open labor market.

■ Under this test there is ample material evidence to support the finding of the chancellor that the injury to employee's left hand, added to his prior physical impairment, resulted in him becoming "permanently and totally incapacitated" as required by T.C.A. sec. 50-1027.

The judgment is affirmed.

CRESON, HUMPHREYS and McCANLESS, JUSTICES, and JENKINS, SPECIAL JUSTICE, concur.