**Doxie M. FRAYSER**

v.

**DENTSPLY INTERNATIONAL, INC.**

Supreme Court of Tennessee,
Special Workers' Compensation
Appeals Panel,
at Jackson.

June 28, 2002.

Donald A. Donati and William B. Ryan, Memphis, Tennessee, for the Plaintiff/Appellant, Doxie M. Frayser.

Howard B. Hayden, Memphis, Tennessee, for the Defendant/Appellee, Dentsply International, Inc.

## JUDGMENT ORDER

PER CURIAM.

This case is before the Court upon the motion for review filed by the appellant, Doxie M. Frayser, pursuant to Tenn.Code Ann. § 50–6–225(e)(5)(B), the entire record, including the order of referral to the Special Workers' Compensation Appeals Panel, and the Panel's Memorandum Opinion setting forth its findings of fact and conclusions of law.

It appears to the Court that the motion for review is not well-taken and is therefore denied. The Panel's findings of fact and conclusions of law, which are incorporated by reference, are adopted and affirmed. The decision of the Panel is made the judgment of the Court. The Panel opinion shall be published.

Costs are assessed to the defendant, Dentsply International, Inc., for which execution may issue if necessary.

It is so ORDERED.

HOLDER, J., not participating.

## MEMORANDUM OPINION

L. TERRY LAFFERTY, SR. J., delivered the opinion of the court, in which JANICE M. HOLDER, J., and JOE C. LOSER, SP. J., joined.

This workers' compensation appeal was referred to the Special Workers' Compensation Appeals Panel of the Supreme Court in accordance with Tenn.Code Ann. § 50–6–225(e)(3) for hearing and reporting to the Supreme Court of findings of fact and conclusions of law. The trial court found that Plaintiff's workers' compensation claim for an injury occurring in 1994, was barred by the statute of limitations and that the doctrine of equitable estoppel was not applicable to the case. We hold that an employer may not offer an employee an alternative benefit option that would circumvent Tennessee Workers' Compensation Law when the employer is aware that the employee's injury is work-related. As discussed below, the trial court's judgment is reversed and remanded in part and affirmed in part.

On January 21, 1999, Plaintiff filed a workers' compensation complaint alleging that in December 1993 he injured his back in the course of employment with Defendant/Appellee. After back surgery in January 1994, Plaintiff returned to work in April 1994. On August 24, 1994, Plaintiff experienced another back injury in the course of employment and underwent additional surgery in October 1994. Plaintiff contends that he reported both injuries in a timely manner. On January 23, 1998, Plaintiff re-injured his back in the course of employment and as a result, Plaintiff has been unable to return to employment with Defendant. In response, Defendant denies that Plaintiff sustained an accidental injury on the dates in question and that Plaintiff gave timely notice. Furthermore, Defendant affirmatively asserts that Plaintiff's complaint was not filed timely within the requirements of Tennessee Code Annotated § 50–6–203, and that Plaintiff is barred from recovery. To determine the merits of these issues, the trial court conducted an evidentiary hearing on May 21, 2001. To resolve the issue in this appeal,

we must set forth the salient facts adduced in the record.

Doxie Frayser, Plaintiff, age 54, a high school graduate, received a Bachelor of Science degree from Memphis State University. Plaintiff had some prior training as a dental technician. Plaintiff commenced employment with Defendant in 1978 as a traveling salesman and technical consultant. Plaintiff cannot recall any orientation concerning job-related injuries or discussion of workers' compensation. Defendant manufactures dentures and materials for the production and use of such items by the dental industry. Its principal office is in York, Pennsylvania. In 1984, in Atlanta, Georgia, Plaintiff injured his back during his employment and was seen by a doctor in Charlotte, North Carolina. After conservative treatment, Plaintiff returned to work without a workers' compensation claim. Plaintiff's second injury to his back occurred in October 1993, in Jackson, Tennessee, while attending a meeting. Plaintiff was seen by his treating physician, Dr. Tulio Bertorini, who referred Plaintiff to Dr. D.J. Canale. Dr. Canale recommended surgery based upon x-rays and a myelogram and told Plaintiff that he would be off work for twelve (12) weeks. Plaintiff called his immediate supervisor, Bill Yacola, who directed Plaintiff to contact Human Resources in York, Pennsylvania.

According to Plaintiff, he talked several times with Ms. Carol Craddock in Human Resources in Pennsylvania. Plaintiff explained to Ms. Craddock what had happened and asked how would he be paid for twelve weeks, who pays the doctor, and who pays the hospital bill. Plaintiff advised her that he hurt his back while working. As to the 1984 injury, Ms. Craddock could not find anything in his personnel record concerning this injury. Plaintiff testified that Ms. Craddock advised him, "well, you can make a worker's comp claim, or you can file this under real insurance, and the differences are medical—the way the doctors and the hospital gets paid and the way I get paid.... that under worker's comp you get 60 percent of your income while you are off away from work, but that worker's comp paid all of the medical bills." Under a regular insurance claim, Ms. Craddock stated, "you've got your 80/20; it is like an 80 percent paid by the insurance—or really, Dentsply was self-insured, but somebody was managing that for them, and 20 percent by the employee, but that is only up to a certain dollar amount. I think it was after a thousand dollars out of your pocket; then they pick up a hundred percent, but at the same time while I was off I'd be getting a hundred percent of my pay, as well."

Plaintiff stated that he advised Ms. Craddock, "I'd take a hundred percent. I, mean, it sounded like a better deal, if I could get a hundred percent of my pay; and after a thousand dollars the medical bills were going to be paid. Anyway, it sounded like the best option." Plaintiff was not told anything about permanent partial disability. Plaintiff identified two forms sent to him by Ms. Craddock entitled "Request for Non Occupational Accident and Sickness Benefits," exhibits one and two. Exhibit one was incorrectly completed by Dr. Canale as being an unrelated work injury. Exhibit two was a corrected form by Dr. Canale indicating that the treatment of January 1994, was work related. Plaintiff returned both forms to Defendant. Plaintiff returned to work after surgery in January 1994, for six months until August 24, 1994. In Mobile, Alabama, while on a work-related visit, Plaintiff re-injured his back. Plaintiff contacted Bill Yacola and advised him that he was unable to get out of bed due to his back injury. Yacola instructed Plaintiff to return to Memphis for a doctor's visit. Plaintiff returned to Memphis and was

seen by his doctor. Plaintiff identified a memo, Exhibit 3, that Bill Yacola sent to Bill Yanavitch, in Pennsylvania, concerning Plaintiff's injury of August 24. After conservative treatment, Dr. Canale eventually performed surgery for this back injury in October 1994. Plaintiff identified another "Request for Non Occupational Accident and Sickness Benefits" form, Exhibit 4, indicating a work-related accident of August 24, 1994.

Plaintiff testified that he did not receive any notice from the State of Pennsylvania or Tennessee concerning a worker's compensation claim. Nor, specifically, did Plaintiff receive any notice from Traveler's Insurance Company advising him of the right to file a worker's comp claim. Plaintiff returned to work in January 1995, and Defendant furnished a new car with a larger wheel base and more comfortable seat to ease his back pain. In January 1997, Plaintiff was attending a sales meeting and talked to Bill Yanavitch about his back. After telling Yanavitch about his concerns, Plaintiff was told "not to worry about it, that I had, like, ten years to make a claim on it, to just do the best I could as far as work." Due to his inability to perform his job satisfactorily, Plaintiff resigned his position in March 1998. Yanavitch called Plaintiff and advised him that he had received a letter from Plaintiff's doctor stating that Plaintiff was disabled; could not do his job; and that the company was going to put him on short-term disability. And under those circumstances, he could not accept Plaintiff's resignation. Plaintiff was placed on short-term disability with pay. Plaintiff has been unable to work and continues to have good and bad days with his back.

During cross-examination, Plaintiff stated that he was contacted by Traveler's Insurance Company in regard to a work-related claim injury, in 1998, with a denial of Dr. Bertorini's bill or physical therapy. Defendant offered two videos of Plaintiff washing his car in February 2000, and riding his motorcycle in August 2000.

On behalf of Defendant, Carol Craddock testified that she was an administrative assistant in Human Resources in 1993, handling workers' compensation claims. Ms. Craddock explained the company's procedure for handling worker's comp claims. In case of a work-related injury, an employee completes an accident report or it is called into her. Ms. Craddock then calls Traveler's Insurance Company, who would send the notice to the State and to the employee. Then, an adjuster generally contacts the employee and obtains background information. The employee would be sent medical releases. Ms. Craddock denied talking to Plaintiff and explaining a choice between a claim under worker's comp and the group health plan. Ms. Craddock went on to testify that in cases of work-related injuries, employees were not given an option if it is a worker's comp claim, "because if you—if you take away their ability to file a comp claim, you've just taken away their ability to collect any type of permanent or temporary disability that might be involved in that claim."

Prior to her testimony, Ms. Craddock reviewed the adjuster's notes from Traveler's on Plaintiff's claim. Ms. Craddock called into Traveler's a worker's comp claim, due to the surgery of October 1994, being work related. However, the benefits administrator wanted it handled under group, but Ms. Craddock insisted that the claim be called in as a comp claim. Since the injury was work related, an employee does not have an option. Ms. Craddock acknowledged a copy of Traveler's first notice of injury, dated October 17, 1994, concerning Plaintiff's complaint (Exhibit 12). Ms. Craddock could not identify exhibits 1, 2 and 4, Non Occupational Acci-

dent and Sickness Benefits forms, since she did not handle group claims.

During cross-examination, Ms. Craddock acknowledged that Traveler's would file with the State a notice of injury and also a copy to the injured employee. Also, Plaintiff did report a work-related injury in August 1994. Plaintiff, being a salesman, could see any doctor he chose. Ms. Craddock testified that in reviewing Traveler's adjuster's notes, she did not see any notice from Traveler's to Plaintiff that his comp claim was not covered in 1995. However, Ms. Craddock did state that the adjuster's file indicated that Traveler's received no medicals, that there was no disability, and they were closing the file. Ms. Craddock did not notify Plaintiff that his claim should be handled as a comp claim, but assumed Traveler's did so.

In argument, Plaintiff concedes there was a notice problem with reference to the injury of October 1993, but the evidence clearly supports that notice was given as to the August 1994 injury. Defendant admits that Plaintiff has a compelling argument as to the August claim and believes they are stuck with Dr. Boals' rating, since Dr. Segal did not differentiate between the two surgeries.

## MEDICAL EVIDENCE

Dr. Joseph C. Boals, III, a board certified orthopedic surgeon, saw Plaintiff on December 4, 2000, at request of counsel. Dr. Boals obtained Plaintiff's work history and reviewed the medical history of Plaintiff's treatment. Plaintiff had a series of work-related back injuries beginning in 1985. Plaintiff injured his back in 1993, which required surgery by Dr. Canale in January 1994. Again in August 1994, Plaintiff re-injured his back requiring a second surgery in October 1994. Between January 1995 and March 1998, Plaintiff continued employment with periodic back pain, requiring treatment and physical therapy. A physical examination indicated that Plaintiff had accentuated lordosis, a big bend in the back when he walks, Plaintiff looked like a "squat gnome." Dr. Boals opined that Plaintiff suffers from residuals from multiple injuries to the back resulting in two surgeries. Utilizing the AMA Guidelines, Dr. Boals opined that Plaintiff sustained an impairment. Dr. Boals opined that Plaintiff sustained a 10 percent anatomical impairment from each operation and a 10 percent anatomical impairment for neuropathy which came from the second operation. Combining these two ratings, Plaintiff sustained a 27 percent impairment to the body as a whole.

In its detailed findings of fact and conclusions of law, the trial court found that Plaintiff filed his workers' compensation claim on January 21, 1999. That the period of limitations had expired, with reference to the claim of August 1994, unless the Defendant was equitably estopped to deny coverage. The trial court found that Plaintiff made it clear to his supervisors that the injury resulted from the performance of Plaintiff's duties for Defendant. The Defendant's manager of employee relations, however, proceeded to send Plaintiff a "non-occupational accident and sickness benefit" form. When Plaintiff completed and returned this form, he again clearly notified Defendant that the injury resulted from his employment. A representative of the Defendant in a previous discussion advised Plaintiff about the different benefits of workers' compensation insurance versus the nonoccupational insurance plan. Implicit in the trial court's findings, therefore, is the fact that Plaintiff was given an option by Defendant of which plan he could use. The trial court then found that Plaintiff elected to receive the greater immediate benefits of

the non-occupational plan. Further, there was no discussion of permanent partial disability. As a result of surgery in October 1994, Plaintiff sustained a total physical impairment of 27 percent to the body as a whole. Plaintiff has sustained a permanent partial disability of 25 percent to the body as a whole. In conclusion, the trial court determined that Plaintiff and Defendant were aware that Plaintiff sustained an accidental injury which entitled him to benefits under the Tennessee Workers' Compensation Act. The trial court found that the evidence did not support the conclusion that Plaintiff was misled in any way by the Defendant or that anything was misrepresented to him. Plaintiff made a conscious decision to accept what he considered superior immediate benefits. The trial court concluded that Plaintiff had at least one year under the statute to change his mind and file suit, since the Defendant, knowing of a compensable accident, could not escape liability for worker's compensation benefits if a timely demand had been made.

## LEGAL ANALYSIS

█ Review of the findings of fact made by the trial court is *de novo* upon the record, accompanied by a presumption of the correctness of the findings, unless the preponderance of the evidence is otherwise. Tenn.Code Ann. § 50–6–225(e)(2); *Story v. Legion Ins. Co.*, 3 S.W.3d 450, 451 (Tenn.1999); *Stone v. City of McMinnville*, 896 S.W.2d 548, 550 (Tenn.1995). This standard requires this Panel to weigh in more depth the factual findings and conclusions of the trial court in a workers' compensation case. *Id.; Corcoran v. Foster Auto GMC, Inc.*, 746 S.W.2d 452, 456 (Tenn.1988). However, considerable deference must be given to the trial court, who has seen and heard witnesses especially where issues of credibility and

weight of oral testimony are involved. *Jones v. Hartford Accident & Indem. Co.*, 811 S.W.2d 516, 521 (Tenn.1991).

Plaintiff asserts that Defendant's silence in failing to advise him of the rights to permanent partial disability under workers' compensation benefits versus Defendant's non-occupational disability plan works as an equitable estoppel and tolls the running of the statute of limitations. Defendant counters that the evidence is devoid of misrepresentations, misconduct or misleading of Plaintiff in Plaintiff's decision to accept non-occupational benefits in lieu of workers' compensation benefits. Thus, the Defendant argues that the evidence supports the trial court's judgment in applying the statute of limitations to Plaintiff's work-related injury of August 1994.

Tennessee Code Annotated § 50–6–203(a) in pertinent part states:

The right to compensation under the Workers' Compensation Law shall be forever barred, unless, within one (1) year after the accident resulting in injury or death occurred, the notice required by sec. 50–6–202 is given the employer and a claim for compensation under the provisions of this chapter is filed with the tribunal having jurisdiction to hear and determine the matter ...

█ It is well settled in Tennessee that an employer or its insurer may be estopped to rely upon the one year statute of limitations for the filing of a workers' compensation claim if Plaintiff/Employee justifiably relies upon a misrepresentation or concealment of a material fact on the part of the employer which results in failure to file suit within the one year period of limitations. *Fahrner v. SW Mfg., Inc.*, 48 S.W.3d 141, 145 (Tenn.2001); *Norton v. Everhart*, 895 S.W.2d 317, 321 (Tenn.1995); *Lusk v. Consol. Aluminum Corp.*, 655

S.W.2d 917, 920 (Tenn.1983). It is, also, established in this State that equitable estoppel embraces not only ideas conveyed by words written or spoken and things actually done but includes the silence of one under a duty to speak and his or her omission to act, as well; negligent silence may work an equitable estoppel, and acts of conduct which are calculated to mislead and do in fact mislead will work an estoppel notwithstanding there was no intention to do so. *Lusk v. Consol. Aluminum Corp.,* 655 S.W.2d at 920.

■ From this panel's review of the record, we are not convinced that equitable estoppel is the proper remedy and analysis in this case. The record clearly established that Plaintiff incurred a work-related injury in August 1994, Defendant had actual knowledge and reported the same to its insurance carrier, Traveler's Insurance Company. Also, the record reflects, that as to past work-related injuries, Plaintiff accepted Defendant's non-occupational disability benefits in lieu of workers' compensation benefits. Nothing in the record indicates that Defendant misled or misrepresented any information at the time Plaintiff elected to accept non-occupational disability benefits. Nor, can we say that Defendant's non-disclosure of permanent partial disability under workers' compensation claims constitutes a misleading silence for Plaintiff to reject a workers' compensation claim. We therefore conclude that equitable estoppel does not bar the employer's statute of limitations defense.

We hold, however, that the Tennessee Workers' Compensation supremacy clause, Tenn.Code Ann. § 50–6–114(a), governs the facts in this case. Tennessee Code Annotated § 50–6–114(a) in pertinent part states:

No contract or agreement, written or implied, or rule, regulation or other device, shall in any manner operate to relieve any employer, in whole or in part, of any obligation created by this chapter except as herein provided.

Further, Tennessee Code Annotated § 50–6–108(a) states:

The rights and remedies herein granted to an employee subject to the Workers' Compensation Law on account of personal injury or death by accident ... shall exclude all other rights and remedies of such employee. . . .

In *Harman v. Moore's Quality Snack Foods,* 815 S.W.2d 519 (Tenn.Ct.App.1991), the Court of Appeals addressed the affect of employees' actions against a Defendant under the Tennessee Human Rights Act, sexual harassment, Tenn.Code Ann. § 4–21–101, et seq., versus Tennessee Workers' Compensation Law. The Court stated:

As for the purpose of our Workers' Compensation Law, our courts have spoken to this more than once. Its purpose has been declared to be to provide compensation for loss of earning power or capacity sustained by workers through injuries in industry. *Mathis v. J.L. Forrest & Sons,* 188 Tenn. 128, 216 S.W.2d 967 (Tenn.1949); to compensate for disability of the employee occurring under certain specified conditions while such employee is working for the employer. *Norton v. Standard Coosa–Thatcher Co.,* 203 Tenn. 649, 315 S.W.2d 245 (Tenn. 1958).

Our Workers' Compensation Law generally is the sole tort remedy available to a worker who is injured in a fashion that falls within the broad scope of the Workers' Compensation statute. Section 50–6–108 states in part that "The rights and remedies herein granted to an employee subject to Workers' Compensation Law on account of personal injury or death by accident ... shall exclude all other

rights and remedies of such employee...." This statute clearly expresses a legislative intent that any potential liability of the employer arising from "injury or death" is abolished in favor of the remedy provided by worker's compensation.

Construing Tennessee Code Annotated §§ 50–6–108 and 50–6–114(a) together, we find that when a work-related injury arises out of and in the course of employment, an employee's only option is to proceed under the provisions of this chapter. The trial court found implicitly that Plaintiff was provided an option to proceed under his health care benefits or under the workers' compensation law. That finding is entitled to a presumption of correctness. Tenn.Code Ann. § 50–6–225(e)(2) (1999 & Supp.2001); *see Seals v. England/Corsair Upholstery Mfg. Co., Inc.,* 984 S.W.2d 912, 915 (Tenn.1999). Accordingly, we hold that Defendant's offer to Plaintiff of an option to use his health care benefits in lieu of the workers' compensation law is impermissible. Allowing such option would circumvent the purpose of the Workers' Compensation Law. *See McCaleb v. Saturn Corp.,* 910 S.W.2d 412, 416 (Tenn.Sp.Workers Comp.1995); *Nutt v. Champion Intern. Corp.,* 980 S.W.2d 365, 368 (Tenn.1998).

In conclusion, we find that Plaintiff has sustained a work-related injury arising out of and in the course of employment in August 1994. Further, we find that an employer may not offer an option that would circumvent the provisions of the Workers' Compensation Law. Therefore, we reverse the trial court's judgment that Plaintiff's workers' compensation claim is barred by the statute of limitations. Based upon the trial court's finding, we affirm the trial court's alternative judgment that Plaintiff sustained a 25 percent permanent partial disability to the body as a whole. We remand this case to the trial court for proceedings consistent with this opinion. Costs are assessed against Defendant.