**Richard E. FELTNER,**
**Plaintiff–Appellee,**

v.

**LAMAR ADVERTISING, INC. and the Travelers Company, Defendants–Appellants.**

No. 02–5362.

United States Court of Appeals,
Sixth Circuit.

Dec. 4, 2003.

Frank E. Watkins, Jr., F.E. Watkins & Associates, Steven C.R. Brown, Birmingham, AL, for Plaintiff–Appellee.

Chad A. Dickson, Richard E. Spicer, Spicer, Flynn & Rudstrom, Nashville, TN, for Defendant–Appellant.

Before BOGGS, Chief Judge; and KEITH and GIBBONS, Circuit Judges.

GIBBONS, Circuit Judge.

Plaintiff-appellee Richard E. Feltner sustained serious and life-threatening injuries when he fell from a billboard while working for defendant-appellant Lamar Advertising, Inc. ("Lamar Advertising"). He brought suit against the defendants under the Tennessee Workers' Compensation Act, Tenn.Code Ann. §§ 50–6–101—50–6–705 ("TWCA"). The only issue at trial was whether Feltner suffers from a permanent total disability or a permanent partial disability as a result of his injuries. The district court concluded that Feltner is permanently and totally disabled and ordered defendants to pay certain of his medical expenses. Defendants appeal the district court's finding that Feltner has a permanent total disability and argue that Feltner's ability to obtain four jobs and to perform volunteer work since his accident precludes a finding of permanent total disability. For the following reasons, we affirm the judgment of the district court.

## I.

On November 26, 1996, Feltner fell from a billboard in Nashville, Tennessee. At the time, he was working for Lamar Advertising as a billboard construction worker. Feltner fell four stories and landed on his feet. He broke both femurs, several ribs, and his sternum. In addition, he shattered his right elbow, punctured his right lung, and suffered internal bleeding. He also suffered burst fractures at his T11, T12, L1, and S1 vertebrae and additional injures to his head and neck. As a result of this accident, Feltner is a T10 paraplegic. Heterotrophic ossification[1] has caused his right elbow to fuse at a permanent 90 degree angle. At the time of his trial, he had bed sores on both of his heels and his right lower calf due to his inability to stand and relieve the pressure on his legs. These sores were slow in healing and Feltner needed someone to change the bandages on his legs on a daily basis due to constant bleeding. Both parties have stipulated that Feltner has an 80% permanent physical impairment.

Feltner is thirty-four years old, divorced, and living with his older brother in Las Vegas, Nevada. Every morning, his

---

1. Plaintiff's expert Dr. Maureen Mackey defined heterotrophic ossification as "the growth of a bone around a joint after an injury. It occurs in paraplegics more than other people, and once it starts it's very hard to stop. Basically, the bone grows in the muscle and tendons around a joint and forms a big solid lump that [is just like] pouring concrete around a joint. It sticks it. It fixes it in place."

brother has to help him use the bathroom. He has a neurogenic bowel and bladder, which means that he has to digitally or manually stimulate his rectum twice a day for up to an hour at a time in order to empty his bowels and that he must catheterize himself as many as eight times per day. The digital device he uses occasionally punctures the inside of his rectum, causing hemorrhoids and severe bleeding. Despite regular catheterization, he suffers from periodic urinary tract infections. Feltner was right-handed before his accident, but the impairment to his right arm has caused him to have problems feeding himself and he cannot dress without assistance. The condition of his right arm prevents him from typing more than ten words per minute.

Feltner is a high school graduate with two additional years of vocational training. In 1987, he received a certificate as a media specialist. As part of his vocational training he learned how to make commercials and productions "on [a] basic level," but he also testified that he is currently unable to hold up a video camera and he cannot perform any other type of media-related job. Feltner's first job was with the United States Army as an aviation operations specialist. He served in the army for four years, from 1987 to 1991, and he is a veteran of Operation Desert Storm. After his honorable discharge, Feltner worked as an assistant manager of two gas stations before becoming a correctional officer at a state prison in Tennessee. He began working for Lamar Advertising in May 1996 and worked there until his accident in November.

Since his accident, Feltner has been employed at four different jobs. His first job was with Sierra's Advertising Service ("Sierra") from December 1998 until April 1999. He answered phones, took messages, updated accounts, and dispatched service personnel. Sierra hired him because of the computer experience he obtained during a two-month course in basic computer technology that he completed in 1998. As part of that two-month course, he received training on the Internet and on Microsoft Windows, Word and Excel. Sierra paid him $5.00—$6.00 an hour, and he worked thirty hours per week. He eventually left this job because Sierra's buildings and bathrooms were not handicap-accessible.

Feltner's next employment was with Personal Touch Answering Service ("Personal Touch"). He performed essentially the same tasks he had performed for Sierra at a salary of $7.00 per hour for 30 hours a week or less. Feltner again had problems with a lack of facilities for the handicapped, but he stated that he left this job because he was "stolen away" by one of Personal Touch's clients, Bob's Sewer and Drain ("Bob's"). At Bob's, Feltner worked as an administrative aide and performed data entry tasks. He was paid $8.00 per hour and worked approximately 30 hours per week until he was laid off after less than three months on the job. Before trial, the last paying job Feltner had was with Save On Drugs, where he worked mainly as a cashier. In this job he was paid $6.00—$6.25 per hour and worked between 17 and 25 hours per week.

In addition to his part-time employment, Feltner also volunteers at a local hospital in Las Vegas for a few hours each week, visiting patients with injuries similar to his own. He also volunteers as the head deacon at his church.

At each of the jobs at which he has worked since his accident, Feltner has worked in less than ideal conditions for a person with his level of disability. The bathrooms often were not private and did not contain handicapped entrances or facilities. He testified that it usually took him

between 15 to 20 minutes each time he used the bathroom and that, on average, he used the facilities every other hour.

Feltner brought suit under the TWCA against Lamar Advertising and its insurer, The Travelers Company, in order to recover damages for the injuries he sustained during the course of his employment. The parties stipulated that Feltner suffers from an 80% permanent physical impairment, but contested whether he qualified as permanently and totally disabled or permanently and partially disabled for purposes of the TWCA. The district court found that Feltner was permanently and totally disabled despite his ability to hold four post-injury part-time jobs. On appeal, defendants-appellants contend that Feltner's ability to work and compete for a job in the "open labor market" demonstrates that the district court erred in finding that he has a permanent total disability.

## II.

The extent of a workers' vocational disability is a question of fact to be determined from all of the evidence, including lay and expert testimony. *Nelson v. Wal–Mart Stores, Inc.*, 8 S.W.3d 625, 628 (Tenn. 1999).[2] Under Tennessee law, a trial court's findings of fact in a worker's compensation case are reviewed *de novo* upon the record of the trial court, "accompanied by a presumption of the correctness of the finding, unless the preponderance of the evidence is otherwise." Tenn.Code Ann. § 50–6–225(e)(2); *Gen. Accident Ins. Co. v. Underwood*, No. 95–6110, 1996 WL 659464, at *3 (6th Cir. Nov. 8, 1996). Under this standard of review, the court is required "to weigh in more depth factual findings and conclusions of trial judges in workers' compensations cases." *Cleek v. Wal–Mart Stores, Inc.*, 19 S.W.3d 770, 773 (Tenn.2000). The party claiming workers' compensation benefits has the burden of establishing his claim by a preponderance of the evidence. *Tindall v. Waring Park Ass'n*, 725 S.W.2d 935, 937 (Tenn.1987).

Any award of permanent total disability must be in compliance with the statutory definition of total disability contained in Tenn.Code Ann. § 50–6–207(4). *Prost v. City of Clarksville Police Dept.*, 688 S.W.2d 425, 427 (Tenn.1985). An employee is considered totally disabled when he suffers an injury that "totally incapacitates [him] from working at an occupation which brings him an income." Tenn.Code Ann. § 50–6–207(4)(B). The legal definition of permanent total disability is not the same as the medical definition of permanent total disability. *Cleek*, 19 S.W.3d at 774. In workers' compensation cases, the relevant inquiry as to whether an employee is permanently and totally disabled from a legal perspective must "focus on the employee's ability to return to gainful employment." *Davis v. Reagan*, 951 S.W.2d 766, 767 (Tenn.1997). An assessment of permanent total disability is based upon numerous factors, including the employee's skills, training, education, age, local job opportunities, and his capacity to work at the kinds of employment available in his disabled condition. *Cleek*, 19 S.W.3d at 774 (citing *Roberson v. Loretto Casket Co.*, 722 S.W.2d 390, 394 (Tenn.1986)). An employee's own assessment of his physical condition is considered competent testimony that can be considered in determining

---

2. Feltner brought this action in the United States District Court for the Middle District of Tennessee under that court's diversity jurisdiction. This court has jurisdiction over this appeal pursuant to 28 U.S.C. § 1291. Because this is a diversity case, the substantive law of the state of Tennessee applies. *Erie R. Co. v. Tompkins*, 304 U.S. 64, 78, 58 S.Ct. 817, 82 L.Ed. 1188 (1938).

whether he has a permanent total disability. *McIlvain v. Russell Stover Candies, Inc.*, 996 S.W.2d 179, 183 (Tenn.1999).

Defendants contend that Feltner's ability to obtain four separate jobs since his accident indicates that his injury does not totally incapacitate him from working at an occupation which brings him income. Defendants correctly note that the statute contemplates employment in the open labor market and not a return to the employee's previous position. *Prost*, 688 S.W.2d at 427. However, Tennessee courts have also held that the fact that an employee is employed after his injury in the same type of employment and at the same wages does not per se preclude a finding that he is totally disabled. *Skipper v. Great Cent. Ins. Co.*, 225 Tenn. 584, 474 S.W.2d 420, 424 (1971). As the court noted in *Greeneville Cabinet Co. v. Ramsey*, a plaintiff may be "earning wages, in spite of physical disability, while suffering pain, with the assistance of his fellow employees, or on account of the charity of his employer." 195 Tenn. 409, 260 S.W.2d 157, 159 (1953).

Despite Feltner's laudable efforts to remain in the workforce after his injury, his employment at several post-injury part-time jobs does not preclude a finding of permanent total disability. While post-injury employment is a factor in determining whether a plaintiff is permanently and totally disabled, it must be weighed in light of all other considerations. *Cleek*, 19 S.W.3d at 775. Feltner is a T10 paraplegic, and he has only limited use of his formerly dominant right hand. He has not worked more than thirty hours a week since his accident and it is doubtful he will be able to do more than that at any time in the future given that he must spend fifteen to twenty minutes every two hours on the job in the bathroom in order to self-catheterize. Feltner testified that the bathroom facilities were often inadequate for a person with his level of disability and that he has to be able to elevate his legs periodically throughout the day in order to maintain the blood flow to his heart and to prevent further bed sores from developing. While defendants make much of his vocational training, the only vocational training that he currently has that is of any use is a two-month computer training class, and the physical condition of his right arm makes it difficult for him to implement that training in any meaningful way. Feltner is able to type ten words per minute and he testified at trial that the jobs he has applied for require him to type at least eighty words per minute.[3]

Under Tennessee law, we presume that the district court's findings with respect to the extent of Feltner's vocational disability are correct unless the preponderance of the evidence is otherwise. Considering Feltner's high level of physical impairment and limited ability to utilize his computer training, we cannot say that a preponderance of the evidence weighs against the district court's finding that Feltner has a permanent total disability.

## III.

For the foregoing reasons, we affirm the judgment of the district court.

---

**3.** Defendants also attempt to compare Feltner's situation to that of the plaintiffs in cases in which Tennessee courts have found permanent partial disabilities, including *Nelson, Prost,* and *American Lava Corp. v. Savena,* 493 S.W.2d 77 (Tenn.1973). However, in each of those cases, the plaintiffs had physical impairment ratings ranging from 8% to 30%. *Nelson,* 8 S.W.3d at 627; *Prost,* 688 S.W.2d at 428; *Savena,* 493 S.W.2d at 78. Feltner has an *80%* physical impairment rating.