# IN THE SUPREME COURT OF TENNESSEE
## AT JACKSON
### November 10, 2004 Session

## DENNY LEE RHODES  v.  CAPITAL CITY INSURANCE COMPANY AND JAMES FARMER, DIRECTOR, DEPARTMENT OF LABOR, SECOND INJURY FUND

### Appeal from the Circuit Court for Benton County
### No. 98CCV-092     Hon. Julian P. Guinn, Judge

---

### No. W2004-00283-WC-R3-CV - Filed December 16, 2004

---

The issue in this case is whether an award of permanent total disability should commence when the employee reaches maximum medical improvement or on the last day that the employee is able to work due to the injury.  The trial judge ordered permanent total benefits to be paid as of the day the employee last worked.  The employee appealed, arguing that he was totally disabled from the time that he reached maximum medical improvement, and because he was only able to work in a limited capacity thereafter, he should be able to collect benefits for the period between his reaching maximum medical improvement and the time he ultimately stopped work.  Because the employee was working during the three years at issue and because there was no evidence presented that he was unemployable in the general workforce, the evidence supports the trial court's decision that he did not meet the statutory definition of permanent total disability until he stopped work.

**Tenn. Code Ann. § 50-6-225(e); Judgment of the Benton County Circuit Court is Affirmed**

WILLIAM M. BARKER, J., delivered the opinion of the court, in which FRANK F. DROWOTA, III, C.J., and E. RILEY ANDERSON, ADOLPHO A. BIRCH, Jr., and JANICE M. HOLDER, JJ., joined.

Ricky L. Boren and Jeffrey P. Boyd, Jackson, Tennessee, for the appellant, Denny Lee Rhodes.

David J. Deming and Michael L. Haynie, Nashville, Tennessee, for the appellee, Capital City Insurance Company.

Paul G. Summers, Attorney General and Reporter; and Richard M. Murrell, Assistant Attorney General, for appellee, Second Injury Fund.

## OPINION

## Factual Background

Danny Lee Rhodes was born on January 21, 1953. He has an eighth grade education. His entire work history has involved manual labor, predominately in the logging industry.

On June 22, 1998, Mr. Rhodes suffered a heart attack while on the job as a lumberjack with Bruce Smith Logging Company ("Employer"). Mr. Rhodes remained off work until March 1999, at which time he returned to work with Employer, operating a chain saw. The parties stipulated that Mr. Rhodes reached maximum medical improvement on October 7, 1998. Dr. Louis Cunningham, Mr. Rhodes' cardiologist, determined that Mr. Rhodes had a 30% to 49% permanent physical impairment to the body as a whole as a result of his heart attack.

Mr. Rhodes testified that when he returned to work after his heart attack, he had to have help:

> . . . I had a boy – Bruce [the employer] told me I needed somebody to help me because I couldn't do it all by myself, so I got a boy named Junior Williams to help me, and we just split everything, what we made, right down the center. We halved it.

He worked with the aid of his assistant in 1999 and 2000. He stated that by 2001, he was working less because "[his] heart kept bothering [him]" and he had to take nitroglycerin pills often. Mr. Rhodes' brother then helped with the work. Mr. Rhodes could cut the tree down, but he needed someone else to "trim them up and top them" for him.

Mr. Rhodes finally stopped working for Employer in March of 2002 because he was having increased chest pains, and could no longer do the work. He attempted to work for Crout's Lumber Company, but only worked for three or four days before quitting due to his inability to complete the required tasks. The last day that Mr. Rhodes worked was in April of 2002.

Before suffering the heart attack in June 1998, Mr. Rhodes had sustained multiple injuries resulting in prior findings of permanent partial disability. In 1976, he suffered a crushing injury to his right hand for which he was awarded 40% permanent partial disability to that hand. In 1985, Mr. Rhodes injured his left arm while working as a logger, resulting in an award of 34.9% permanent partial disability to his left upper extremity. In the early 1980s, he injured his left knee, requiring arthroscopic surgery; he was given a 7% disability to the left lower extremity. In February, 1990, Mr. Rhodes was awarded benefits representing 60% permanent partial disability to his right upper extremity following an injury sustained in a fall while cutting logs. In June 1995, Mr. Rhodes was awarded compensation for a 22.5% permanent partial disability to his body as a whole as a result of a neck injury suffered while working for Shaw and Haynes Logging Company.

The trial court found Mr. Rhodes to be 100% totally and permanently disabled. The court found that the previous work-related injuries amounted to a 90% permanent disability to the body as a whole. Therefore, the Second Injury Fund was required to pay 90% of the award while Capital City Insurance, the insurance company for the employer, was required to pay the remaining 10%. The trial court ordered that these benefits be paid from April 23, 2002, until the employee's 65th birthday on January 21, 2018.

Prior to trial, the parties stipulated that Mr. Rhodes had been paid temporary total disability benefits from June 23, 1998, to August 24, 1998, at a weekly benefit rate of $320.92. It was further stipulated that his appropriate benefit rate is $353.29. It was therefore ordered that Mr. Rhodes be paid the difference between the amounts for the period of temporary total disability had already been paid. The parties also stipulated that Mr. Rhodes was due an additional period of temporary total disability benefits at the rate of $353.29 per week for the period of August 24, 1998, to October 7, 1998.

Mr. Rhodes filed a notice of appeal on February 4, 2004. He argues on appeal that his award of permanent total disability should have commenced on the date he reached maximum medical improvement and not on the last day that he worked. Prior to oral arguments before the Special Workers' Compensation Panel, the case was transferred to the entire Supreme Court for review.

**Analysis**

Our standard of review of questions of fact in a workers' compensation appeal is de novo upon the record of the trial court, accompanied by a presumption of correctness of the findings of fact, unless the preponderance of the evidence is otherwise. Tenn. Code Ann. § 50-6-225(e)(2) (Supp. 2004); see also Perrin v. Gaylord Entm't Co., 120 S.W.3d 823, 825-26 (Tenn. 2003). The trial court's findings with respect to credibility and weight of the evidence may generally be inferred from the manner in which the court resolves conflicts in the testimony and decides the case. Tobitt v. Bridgestone/Firestone, Inc., 59 S.W.3d 57, 61 (Tenn. 2001). Our standard of review of questions of law, such as statutory construction issues, is de novo without a presumption of correctness. Perrin, 120 S.W.3d at 826.

Under the Tennessee Workers' Compensation Law, compensable disabilities are divided into four separate classifications: (1) temporary total disability; (2) temporary partial disability; (3) permanent partial disability; and (4) permanent total disability. Tenn. Code Ann. § 50-6-207 (Supp. 2004). Each class of disability is distinct and separately compensated by different methods.

Any award of permanent total disability must be made in compliance with the statutory definition of total disability contained in Tennessee Code Annotated section 50-6-207(4) (Supp. 2004); Vinson v. United Parcel Serv., 92 S.W.3d 380, 386 (Tenn. 2002). The statute defines "permanent total disability" as follows:

> When an injury not otherwise specifically provided for in this chapter, as amended, *totally incapacitates the employee from working at an occupation which brings the employee an income*, such employee shall be considered "totally disabled," and for such disability compensation shall be paid as provided in subdivision (4)(A) . . . .

Tenn. Code Ann. § 50-6-207(4)(B) (Supp. 2004) (emphasis added). Compensation for permanent total disability is "sixty-six and two-thirds percent (66⅔%) of the wages received at the time of the injury, subject to the maximum weekly benefit and minimum weekly benefit . . . paid during the period of the permanent total disability until the employee reaches sixty-five (65) years of age . . . ." Id. at (4)(A).

Following his heart attack and his attaining maximum medical improvement, Mr. Rhodes returned to work in March of 1999. He continued to work as a chain saw operator for three years. While he testified that he was not able to perform his job to the same degree as he was prior to his heart attack, he was able to work and earn an income. Therefore, during the time from March 1999 through April 2001, he did not meet the statutory definition of permanent total disability, which requires an employee to be totally incapacitated from "*working at an occupation which brings the employee an income.*" Tenn. Code Ann. § 50-6-207(4)(B) (Supp. 2004) (emphasis added).

This conforms with the purpose of the Worker's Compensation Act, which is "to provide compensation for loss of earning power or capacity sustained by work[ers] through injuries in industry." Mathis v. J.L. Forrest & Sons, 216 S.W.2d 967 (Tenn. 1949); see Frayser v. Dentsply Int'l, Inc., 78 S.W.3d 242, 248 (Tenn. Workers' Comp. Panel, June 28, 2002). It is contrary to the remedial purpose of the act to allow an employee both to earn a regular income and to collect for permanent total disability at the same time.

Mr. Rhodes argues that he was totally disabled during the time he returned to work and relies upon Atkinson v. Signage, Inc., No. M2002-01491-WC-R3-CV, 2003 WL 21782292 (Tenn. Workers' Comp. Panel Aug. 4, 2003), to support his position. While Atkinson is unreported, it relies upon the reasoning set forth in our decision in Skipper v. Great Central Ins. Co., 474 S.W.2d 420 (Tenn. 1971). Atkinson, at *2.

In Skipper, we held that:

> [T]he fact employee is employed after the injury in the same type of employment and at the same wages does not per se preclude the court from finding he is totally disabled as the words are used in T.C.A. 50-1007(e) [now 50-6-207(4)(B)]. To hold otherwise would have the result of discouraging those few hardy individuals who try to work under great physical handicap, by the threat of denying them compensation which they might otherwise be entitled to if they did not work. We do not think it was the intent of the Legislature that the Workmen's Compensation Statutes be so construed.

In determining permanent total disability as such is defined by T.C.A. § 50-1007(e) [now 50-6-207(4)(B)], this fact of employment after injury is a factor to be considered along with all other factors involved when applying the test, which is whether employee, in light of his education, abilities, physical and/or mental infirmities, is employable in the open labor market.

474 S.W.2d at 424.

In Skipper, there was extensive vocational testimony regarding the employee's employability in the general labor market. Skipper, 474 S.W.2d at 422. An employee of the Tennessee Department of Employment Security testified that Skipper would be very difficult to place in any job because of his education, abilities and infirmities. Id. His present employer testified that if Mr. Skipper simply walked in off the street looking for a job, he doubted very seriously that he would be able to give him a job. Id. The facts of Skipper were reviewed under the "material evidence" rule, and this Court found that the evidence supported the trial court's ruling that the combination of the limitations and the other factors rendered the employee unemployable in the open market and therefore totally disabled. Id. at 424.

In this case, unlike Skipper, there was no evidence regarding Mr. Rhodes' employability in the general workforce. While he testified that he was unable to fully perform his job as a chain saw operator, there was no showing that he would have been unable to perform a less strenuous job. See Prost v. City of Clarksville, 688 S.W.2d 425 (Tenn. 1985) (precluding a finding of total disability where the employee was unable to perform prior job, but could perform other work in the open labor market); see also American Lava Corp. v. Savena, 493 S.W.2d 77 (Tenn. 1973) (holding that the employee was not totally and permanently disabled because employee was subsequently employed at a service station). It would be an extremely rare situation in which an injured employee could, at the same time both work and be found permanently and totally disabled. In order for such a situation to occur, the evidence would have to show that the employee was not employable in the open labor market and that the only reason that the employee was currently working was through the magnanimity of his or her employer. See Skipper, 474 S.W.2d at 424. Such facts are simply not present in the case at hand.

**Conclusion**

For an employee to be totally disabled, he or she must have an injury which "totally incapacitates the employee from working at an occupation which brings the employee an income." Tenn. Code Ann. § 50-6-207(4)(B) (Supp. 2004). Although Mr. Rhodes testified that during the three years at issue he had trouble working, there is simply no showing that he was unemployable and therefore totally disabled as a result of the injury. Therefore, the evidence does not preponderate against the trial judge's finding that Mr. Rhodes was not totally disabled until he was no longer able to work at all, which was in April 2002.

Costs of this appeal are taxed to Denny Lee Rhodes, for which execution may issue if necessary.

_____
WILLIAM M. BARKER, JUSTICE