# IN THE SUPREME COURT OF TENNESSEE
## AT JACKSON
### November 14, 2002 Session

## STEVE VINSON v. UNITED PARCEL SERVICE, ET AL.

**Appeal from the Chancery Court for Shelby County**
**No. CH-00-2101-2     Kenny W. Armstrong, Special Chancellor**

───────────────

**No. W2001-02180-WC-R3-CV - Filed December 30, 2002**

───────────────

The dispositive issue in this workers' compensation action is whether the Special Chancellor erred in finding the appellant, Steve Vinson, to be 100% permanently partially disabled, as a result of a motor vehicle accident that occurred in the scope of his employment. For the reasons set forth herein, we conclude that no such impairment classification exists in the workers' compensation statutes and cases of this state. After conducting our own de novo review of the record, we hold that the preponderance of the evidence supports the appellant's claim that he is 100% permanently and totally disabled and entitled to full workers' compensation benefits pursuant to Tennessee Code Annotated section 50-6-207(4)(A)(i). Additionally, pursuant to relevant workers' compensation statutes, we hold that the trial court erred in allowing appellees a credit for temporary total disability benefits that have heretofore been paid to appellant. Accordingly, the judgment of the chancery court is affirmed, as modified herein, and the case remanded for enforcement of the judgment of this Court.

**Tenn. Code Ann. § 50-6-225(e) (1999) Appeal as of Right; Judgment of the Chancery Court Affirmed as Modified**

WILLIAM M. BARKER, J., delivered the opinion of the court, in which FRANK F. DROWOTA, III, C.J., E. RILEY ANDERSON, ADOLPHO A. BIRCH, JR., and JANICE M. HOLDER, JJ., joined.

Regina Morrison Newman, Memphis, Tennessee, for the Appellant, Steve Vinson.

Mark W. Raines, Memphis, Tennessee, for the Appellees, United Parcel Service, ET AL.

## OPINION

### FACTUAL BACKGROUND

1

The appellant, Steve Vinson, who was 33 years of age at the time of trial, had been employed as a tractor-trailer driver for United Parcel Service (UPS) since 1990. On November 20, 1998, Mr. Vinson was operating his tractor-trailer eastbound on Interstate 40 in Madison County, Tennessee, when another tractor-trailer pulled out in front of appellant's vehicle without its lights on and caused a collision. Mr. Vinson's vehicle was then struck from behind by a pickup truck. As a result of the two collisions, Mr. Vinson suffered multiple injuries including a spine/lumbar burst fracture, hip socket fracture/dislocation, and abdominal trauma. Subsequently, on October 26, 2000, suit was filed for workers' compensation benefits. Following an unsuccessful Benefit Review Conference, the case was tried without a jury on May 2, 2001 before the Honorable Kenny W. Armstrong, sitting as Special Chancellor. The only evidence presented by the appellant was his testimony and the C-32 report completed by Dr. Kelly D. Pucek, Mr. Vinson's orthopedic surgeon. The only evidence presented by appellees was a two-page excerpt from the "Guides to Evaluation of Permanent Impairment."

Mr. Vinson testified that: (1) his spinal injuries required the placement of two metal rods in his back; (2) he underwent an open surgical reduction for his hip fracture; (3) he retains only limited use of one foot due to residual nerve damage caused by injury to his hip; (4) he does not have full range of motion in his injured hip; (5) he is unable to perform sedentary tasks due to continual pain in his back, hips, and lower extremities; (6) he is unable to perform any job that requires him to stand or sit for more than one hour due to discomfort in his lower extremities; and, (7) he is unable to participate in even the most basic physical activities such as cutting grass or playing with his child. When asked if he believed he could work in any other type of full-time employment, Mr. Vinson responded: "No sir, not nothing to do every day all day long." He further stated that he could not perform even sedentary tasks for extended periods of time due to discomfort. On cross-examination, Mr. Vinson testified that his only gainful employment prior to working for UPS was as a stock boy for a local grocery store. On redirect, Mr. Vinson elaborated that he felt that his current injuries would prohibit him from working in that capacity in the future.

The appellant next introduced the C-32 report completed by Dr. Pucek, with accompanying medical records. Dr. Pucek relied upon the combined values chart of the AMA Physician's Guide to Evaluation of Permanent Impairment in order to assign Mr. Vinson a total impairment rating. Dr. Pucek's C-32 report stated that Mr. Vinson sustained a 40% impairment to the body as a whole, consisting of 20% permanent impairment due to his hip injury and an additional 20% impairment due to his spinal fractures. The C-32 report indicated that Mr. Vinson may not lift more than 20 pounds on a limited basis, and may not frequently lift or carry more than 15 pounds. The report also concluded that Mr. Vinson maintains a maximum standing or walking capacity of three hours per day, and may never crawl or crouch. Mr. Vinson also suffers from numerous other physical limitations that impair his activities of daily living, including tying his shoes and operating hand or foot controls that involve pushing or pulling.

At trial, the parties stipulated that: (1) Mr. Vinson sustained compensable injuries; (2) he was earning, at the time of the accident, a wage entitling him to the maximum weekly benefit of $515.00;

2

(3) he has not returned to work at UPS due to his injuries; (4) he had been paid approximately $45,000 in temporary total disability benefits; and, (5) UPS had paid all medical benefits due as of the date of trial.

On May 23, 2001, the Special Chancellor entered a judgment in which he concluded, among other things, that Mr. Vinson was 100% permanently partially disabled to the body as a whole and was entitled to the maximum total benefit of 400 weeks, with the defendants receiving credit for $44,952.14 in temporary total disability benefits previously paid to the employee. Mr. Vinson subsequently filed a motion to alter or amend the judgment, or in the alternative, for a new trial asserting that he was totally and permanently disabled. The trial court denied Mr. Vinson's motion and stated that "while the Plaintiff's injuries are serious, there is simply insufficient medical and/or expert proof in the record to support a finding that Plaintiff is permanently and totally disabled, therefore, Plaintiff's motion is denied."

The appellant sought review of the judgment arguing that the evidence preponderates against the trial court's finding and that appellant is entitled to total and permanent disability benefits pursuant to Tennessee Code Annotated section 50-6-207(4)(A)(i). On June 24, 2002, we issued an order transferring the case from the Appeals Panel to this Court for a full review. Before this Court, the appellant argues that the evidence presented at trial, coupled with the failure of the appellees to rebut appellant's evidence, established that the appellant is permanently and totally disabled. We agree. Accordingly, for the reasons set forth herein, we modify the judgment of the chancery court.

### STANDARD OF REVIEW

Workers' compensation cases are reviewed de novo upon the record of the trial court accompanied by a presumption of correctness unless the evidence preponderates otherwise. Tenn. Code Ann. § 50-6-225(e)(2) (1991 & Supp. 1992); see Ivey v. Trans Global Gas & Oil, 3 S.W.3d 441, 446 (Tenn. 1999) (citing Collins v. Howmet Corp., 970 S.W.2d 941, 943 (Tenn. 1998)). Under this standard, we are "required 'to weigh in more depth factual findings and conclusions of trial judges in workers' compensation cases.'" Cleek v. Wal-Mart Stores, Inc., 19 S.W.3d 770, 773 (Tenn. 2000) (quoting Humphrey v. David Witherspoon, Inc., 682 S.W.2d 900, 901-02 (Tenn. 1984)). It is also well established that we are not bound by the factual findings of the trial court, but "are obliged to review the record on our own to determine where the preponderance of the evidence lies." Cleek, 19 S.W.3d at 773; see also Collins, 970 S.W.2d at 943. However, when there is no material fact in dispute, the question on appeal is one of law and the appropriate review is de novo with no presumption of correctness. See Union Carbide Corp. v. Huddleston, 854 S.W.2d 87, 91 (Tenn. 1993). In this case, where the only dispute between the parties is the conclusion to be reached from the undisputed facts and evidence, the question on appeal is one of law. Thus, our review of the Special Chancellor's conclusions is de novo with no presumption of correctness. See Ganzevoort v. Russell, 949 S.W.2d 293, 296 (Tenn. 1997).

### DISCUSSION

Under the Tennessee workers' compensation statutes, injuries by accident arising out of and in the scope of employment are compensable. See Reeser v. Yellow Freight Systems, Inc., 938 S.W.2d 690 (Tenn. 1997). An injured employee who meets the statutory criteria is entitled to certain monetary benefits, including the payment of all medical expenses arising from the accident together with a recovery for any temporary or permanent disability resulting from the accident. Tenn. Code Ann. § 50-6-207. Pursuant to the statutory scheme, temporary disability benefit payments may not exceed 400 weeks. Tenn. Code Ann. § 50-6-102(13)(C). With respect to permanent disability benefits, the law makes a distinction between those injuries that are limited to scheduled members and those that affect the body as a whole. The maximum weekly benefit available to an injured employee for a permanent partial disability is 400 weeks, however, regardless of whether the injury is to a scheduled member or to the body as a whole. Tenn. Code Ann. § 50-6-207(3)(B). On the other hand, an injured employee found to be permanently and totally disabled is entitled to sixty-six and two-thirds percent of the wages received at the time of the injury until such time that the employee is, by age, "eligible for full benefits in the Old Age Insurance Benefit Program under the Social Security Act."[1] Tenn. Code Ann. § 50-6-207(4)(A)(i).

The Special Chancellor determined Mr. Vinson to be "100% permanently partially disabled." The practical effect of this finding was to limit Mr. Vinson's disability benefits to 400 weeks instead of awarding benefits until such time that he is eligible for the Old Age Insurance Benefit Program. A review of the workers' compensation statutes and cases of this state reveals that no classification of "100% permanently partially disabled" exists. Indeed, as the appellant argues, and common sense dictates, if an individual is 100% permanently "partially" disabled, then he or she must be 100% totally disabled. We find it impossible to distinguish between an injured employee who is 100% permanently partially disabled and one who is 100% permanently and totally disabled.[2] It goes without saying that 100% is 100%. Because the disability classification used by the trial court is supported neither by statute nor case law, we must set it aside. We next must determine from the record before us the proper extent of the plaintiff's vocational disability.

The appellees contend that this court should not find Mr. Vinson permanently and totally disabled because he has not met his burden of proof. Specifically, appellees argue that because the evidence offered at trial was limited to the testimony of the appellant and the C-32 report completed by the appellant's physician, the burden imposed upon a plaintiff in a workers' compensation case

_____

[1] However, an injured employee who is, at the time of the injury, over sixty years of age, is limited to permanent total disability benefits for a period of 260 weeks.

[2] We note that under the current statutory scheme, it appears impossible to find that an injured employee is 100% permanently partially disabled without simultaneously finding that the employee is 100% permanently and totally disabled. For instance, if an injured employee is deemed 99% partially disabled, he or she would be entitled to 396 weeks of benefits at the applicable wage rate. However, if on the other hand an injured employee were deemed 100% partially disabled, he or she would be by all practical measures 100% permanently and totally disabled. Thus, an award of 400 weeks appears to be a statutory impossibility because such a finding would necessarily entail a finding of 100% permanent and total disability.

4

was not satisfied. While the appellees correctly state that the plaintiff in a workers' compensation case bears the burden of proving his case, in all its parts, by a preponderance of the evidence, see Owens-Illinois, Inc. v. Lane, 576 S.W.2d 348, 351 (Tenn. 1978), we disagree that the appellant did not satisfy this burden.

The appellant's formal education ended after one year at a community college. Appellant testified that he has no specialized trade, skill, or training that would enable him to pursue a particular field or occupation. Additionally, the appellant stated that besides working as a stock boy and UPS driver, he has no work history that qualifies him for further employment. Appellant also addressed his current physical limitations and the nature and extent of his past, present, and future medical treatment. Testimony of the appellant, and the C-32 report submitted by Dr. Pucek, further established that appellant is unable to continue working as a UPS driver, despite his willingness and desire to do so.

We note that the testimony of the appellant was completely unchallenged at trial. In fact, cross-examination was limited to three brief questions.[3] Additionally, appellees did not refute in any way the findings of Dr. Pucek as contained in the C-32 report, nor did the appellees employ the services of a vocational or medical expert to challenge appellant's testimony regarding his inability to return to gainful employment. Indeed, the only evidence presented by appellees to challenge the appellant's case was a two-page excerpt from the "Guides to Evaluation of Permanent Impairment." Following a careful review of the record, we find appellant's testimony, coupled with the C-32 report, sufficient to support a finding of permanent and total disability.

We are also of the opinion, contrary to the appellees' contention, that this case is not controlled by our decision in Nelson v. Wal-Mart Stores, Inc., 8 S.W.3d 625 (Tenn. 1999).[4] In Nelson, the plaintiff introduced testimony of an occupational expert who testified that the plaintiff could perform part-time, sedentary work which did not conflict with her medical restrictions. Id. at 629. Importantly, the defendant in Nelson introduced testimony from a medical expert who concluded that the plaintiff was not permanently and totally disabled. Id. While the appellant in the present case did not introduce testimony from an occupational or medical expert, the appellant's testimony and the C-32 report established the severity of his injuries and his apparent inability to work in an occupation that earns an income. Unlike Nelson, no evidence was presented at trial to

---

[3] The record contains the following dialogue between appellees' attorney and Mr. Vinson, which constitutes the entire cross-examination:

Q: "Mr. Vinson, before you started driving a truck for UPS, what did you do?"
A: "I was in college, and I worked at Kroger, a grocery store."
Q: "What were you doing at Kroger?"
A: "Stocking dairy, milk shelves."
Q: "And that's the only other job you've had?"
A: "Only other job I've ever had."

[4] In Nelson, a 67 year-old sales associate for Wal-Mart fell and broke her hip in the course of her employment. The plaintiff argued that she was permanently and totally disabled due to her age and lack of training and skills.

challenge Mr. Vinson's claim of permanent and total disability.

We have previously held that any award of permanent total disability must be in compliance with the statutory definition of total disability contained in Tennessee Code Annotated section 50-6-207(4). Cleek, 19 S.W.3d at 774. The test as to whether an employee is permanently and totally disabled requires us to determine if the employee is "totally incapacitate[d] . . . from working at an occupation which brings the employee an income . . . ." Tenn. Code Ann. § 50-6-207(4)(B) (1999). Section (B) further provides in pertinent part that "when an injury not otherwise specifically provided for in this chapter, as amended, totally incapacitates the employee from working at an occupation that brings such employee an income, such employee shall be considered 'totally disabled,' and for such disability compensation shall be paid provided for in subsection (4)(A) . . . ."

As we stated in Cleek, the determination of permanent and total disability is to be based on a variety of factors such that a complete picture of an individual's ability, or inability, to return to gainful employment is presented before the court. 19 S.W.3d at 774 (citing Davis v. Reagan, 951 S.W.2d 766, 767 (Tenn. 1997)). Such factors include the employee's skills, training, education, age, job opportunities in the immediate and surrounding communities, and the availability of work suited for an individual with that particular disability. Id. (citing Robertson v. Loretto Casket Co., 722 S.W.2d 380, 384 (Tenn. 1986)). Although such an assessment is often made and presented at trial by a vocational specialist, it is well settled that despite the existence or absence of expert testimony, an employee's own assessment of his or her overall physical condition, including the ability or inability to return to gainful employment, is "competent testimony that should be considered." Cleek, 19 S.W.3d at 774 (quoting McIlvain v. Russell Stover Candies, Inc., 996 S.W.2d 179, 183 (Tenn. 1999)); see also Nelson v. Wal-Mart Stores, Inc., 8 S.W.3d 625, 629 (Tenn. 1999). In addition to the C-32 report, the appellant testified about his pain, physical limitations, and ability to return to gainful employment, and in accord with the aforementioned principles of appellate review and the record before us, we hold that the evidence, albeit sparse, preponderates in favor of permanent and total disability.

Finally, we address whether the appellees are entitled to an offset from the total disability award in a sum equal to the temporary total disability benefits already paid to the appellant. The trial court determined that Mr. Vinson was entitled to 400 weeks of disability payments with the defendants receiving a credit of $44,952.14 for temporary total disability benefits previously paid. However, Tennessee Code Annotated section 50-6-102(13)(C) states in part that "'[m]aximum total benefit' means the sum of all weekly benefits to which a worker may be entitled; and . . . (C) For injuries occurring on or after July 1, 1992, the maximum total benefit shall be four hundred (400) weeks times the maximum weekly benefit except in instances of permanent total disability" (emphasis added). In the case of Bomley v. Mid-America Corp., 970 S.W.2d 929 (Tenn. 1998), we addressed the effect of this language in regards to the liability of the Second Injury Fund for a portion of an award of permanent total disability. We determined that awards of permanent total disability under Tennessee Code Annotated section 50-6-207(4)(A)(i) are not subject to the monetary cap imposed by the definition contained in section 102(13) of the code. Hence, because cases of

permanent total disability have been expressly removed from the statutory definition of the term "maximum total benefit," and we find no additional language within the workers' compensation statutes that allows for an offset of temporary total disability benefits, we are of the opinion that the trial court erred by granting the appellees a credit for temporary total disability benefits already paid to the appellant.

## CONCLUSION

We conclude that no such impairment classification of "100% permanently partially disabled" exists in the statutory framework or case law of this state. We further hold, after conducting our own de novo review of the record, that the preponderance of the evidence supports a finding that the appellant is permanently and totally disabled. Finally, because awards of permanent total disability benefits are expressly excluded from the statutory definition of the term "maximum total benefit" in Tennessee Code Annotated section 50-6-102(13), we are of the opinion that appellees are liable for the total disability award without any credit for temporary total disability benefits heretofore paid to the appellant. Accordingly, we affirm, as modified herein, the determination of the trial court and remand the case for enforcement of the judgment of this Court.

Costs of this appeal shall be taxed against the appellees, United Parcel Service and Liberty Mutual Group.

_____
WILLIAM M. BARKER, JUSTICE