IN THE SUPREME COURT OF TENNESSEE
AT NASHVILLE
June 8, 2005 Session

## WAUSAU INSURANCE COMPANY v. VIVIAN ALVINA DORSETT

**Direct Appeal from the Circuit Court of Coffee County**
**No. 30,590, John W. Rollins, Judge**

**M2004-02861-SC-R9-CV - Filed August 19, 2005**

We granted this interlocutory appeal to determine whether the trial court erred in awarding the employee temporary total disability benefits in excess of 400 weeks where the employee had not attained maximum medical improvement within the 400-week period. We hold that the statutory "maximum total benefit" of 400 weeks applies to temporary total disability benefits. Therefore, we reverse the judgment of the trial court and hold that the employer's liability for temporary total disability benefits is statutorily limited to 400 weeks. We remand this case to the trial court for further proceedings consistent with this opinion.

**Tenn. R. App. P. 9; Judgment of the Circuit Court Reversed; Case Remanded**

FRANK F. DROWOTA, III, C. J., delivered the opinion of the court, in which E. RILEY ANDERSON, ADOLPHO A. BIRCH, JR., JANICE M. HOLDER, and WILLIAM M. BARKER, JJ., joined.

John E. Anderson and John Paul Nefflen, Nashville, Tennessee, for the Appellant, Wausau Insurance Company.

Eric J. Burch, Manchester, Tennessee, for the Appellee, Vivian Alvina Dorsett.

**OPINION**

### I. Factual and Procedural Background

This workers' compensation action was originally filed on June 29, 2000, by Wausau Insurance Company ("Wausau") pursuant to Tennessee Code Annotated section 50-6-225 (1999 & Supp. 2004). The defendant-appellee, Vivian Alvina Dorsett ("Dorsett") had claimed workers compensation benefits, alleging that on May 29, 1997, while she was working for Rawlings Sporting

Goods Incorporated at its leather-tanning facility in Tullahoma, she was bitten on the back of her left wrist by a brown recluse spider.[1] Dorsett alleges that her shift began at 4:00 p.m. that day. After cleaning her work space she noticed, at approximately 8:00 p.m., a spot on the back of her left wrist, smaller than the size of a penny, which appeared to be a mosquito bite. Dorsett claimed that by the next day the affected area had spread to the size of a quarter, the skin had broken, and the center of the area appeared black. Dorsett alleged that midway through her shift on May 30, 1997, she began experiencing severe nausea and chills. By the next day, red "streaking" had appeared near the affected area, and ulcers or sores had appeared near the streaking. Dorsett was treated by Dr. Stephen Bills who opined that she had been bitten by a spider and prescribed an antibiotic.

After undergoing various treatments, including antibiotic medications and skin grafts, all of which failed to eliminate the red streaking and ulcers on her left arm, Dorsett was referred to Dr. Lloyd E. King. Dr. King, a board-certified dermatologist who had served as the chief of dermatology at Vanderbilt University Medical Center since 1977, was deposed on June 5, 2001. Dr. King explained that he had conducted extensive research of brown recluse spider bites, had written at least fifteen articles on the subject, and had "been widely quoted in the area of brown recluse spider bites and complications." Dr. King opined that the history Dorsett had given was consistent with her having been bitten by a brown recluse spider. Dr. King diagnosed Dorsett with pyoderma gangrenosum, a condition Dr. King described as "chronic pus in the skin with ulcers in which you can't find the germs by standard tests. So it's considered microbiologically sterile. 'Sterile' meaning you can't culture out any germs." Although he could not state to a reasonable degree of medical certainty that Dorsett's pyoderma gangrenosum had been caused by the brown recluse spider bite, Dr. King explained that it is not uncommon for the condition to develop in patients who had been bitten by a brown recluse spider. Dr. King opined that Dorsett had not attained maximum medical improvement, even though she had been treated with "all the known therapies for pyoderma gangrenosum." However, Dr. King remained "hopeful" that Dorsett would improve because, two weeks earlier, he had started Dorsett on a new treatment, which had then only recently been approved by the Federal Drug Administration.

Unfortunately, Dorsett's condition did not improve as Dr. King had hoped. Subsequently, at the request of Wausau, Dorsett was referred for a second opinion to the Mayo Clinic in Rochester, Minnesota, because of its expertise in evaluating patients with chronic ulcers and pyoderma gangrenosum. Dr. Arnold Schroeter, who had served as chairperson of dermatology at the Mayo Clinic, evaluated Dorsett. Dr. Schroeter determined that Dorsett has a genetic enzyme deficiency, a condition known as methylenetetrahydrofolate reductase. This deficiency results in abnormal

---

[1] Wausau denies that Dorsett can establish that the brown recluse spider bite occurred in the course and scope of her employment. However, whether the spider bite arose in the course and scope of employment is not at issue in this interlocutory appeal, and we recount Dorsett's allegations to provide context for the issue presented in this appeal.

coagulation and thrombophilia[2] and is known "for its role in strokes and heart attacks." As treatment for this condition, Dr. Schroeter recommended that Dorsett take folic acid to compensate for the enzyme deficiency and coumadin, or another comparable anticoagulant drug, to prevent clotting.

Dr. King implemented the recommended treatment regimen, and when he was deposed again on October 8, 2004, Dr. King confirmed that Dorsett had responded well to the new treatment, with the most significant improvements in her condition occurring during the preceding three months. Dr. King diagnosed Dorsett with "chronic ulceration of the left forearm secondary to a brown recluse bite in the context of someone who has a genetic deficiency of an enzyme called methylenetetrahydrofolate reductase." He explained that, despite the treatment, Dorsett has continued to experience migraine headaches, allergies and sensitivity to various chemicals, chronic pain syndrome, ulcerations on her left arm, a large ventral hernia on which surgeons had refused to operate because of her history of clotting, and weight gain and fluid retention resulting from her inability to perform daily living activities. When asked to estimate the permanency of Dorsett's injuries, Dr. King replied "I have no specific timetable. It—she is currently, I think, improving, but we have had her improved before. So I cannot give a definite timetable of when she would be 'well.'" Dr. King was "not hopeful" that Dorsett would be able to return to work. Dr. King acknowledged, however, that he had not assigned Dorsett any permanent restrictions because she had not attained maximum medical improvement.

Six days after Dr. King was deposed, Wausau filed a motion to continue the trial, which had been scheduled for December 13, 2004. Relying upon Dr. King's deposition, Wausau alleged that Dorsett had not attained maximum medical improvement. Wausau requested a continuance of the trial until Dorsett had reached maximum medical improvement.

In her response to Wausau's motion, Dorsett maintained that the trial court should proceed to trial and find her permanently and totally disabled, despite her not having attained maximum medical improvement. Alternatively, Dorsett asked the trial court to direct Wausau to continue paying her temporary total disability benefits until she reached maximum medical improvement. On February 3, 1998, the Tennessee Department of Labor, Workers' Compensation Division ordered Wausau to pay temporary total disability benefits to Dorsett, and Wausau has paid temporary total disability benefits since that time.[3] In her response to the motion to continue, Dorsett acknowledged that "[u]nder the Tennessee Workers Compensation Statutes, an employee is entitled to four hundred

---

[2]"Thrombophilia is a term used to describe a group of conditions in which there is an increased tendency, often repeated and often over an extended period of time, for excessive clotting." Amy D. Shapiro, An Overview of Thrombophilia, Hemaware, Vol. 6, Issue 5 at 13, *at* www.hemophilia.org/bdi/Thrombo_article.pdf (last visited July 26, 2005).

[3]On February 20, 2002, the Department of Labor ordered Wausau to cease temporary total disability benefit payments, but on May 9, 2002, the Department of Labor ordered Wausau to resume the payments and ordered Wausau to pay Dorsett a lump sum representing the temporary total disability benefits which Wausau would have paid had the February 20, 2002 order not allowed it to cease the payments. Thus, Wausau has paid temporary total benefits from February 3, 1998, to the present.

(400) weeks of compensation unless the employee is deemed permanently and totally disabled," but Dorsett nonetheless asserted that the trial court should order Wausau to continue paying her temporary total disability benefits "irrespective of the four hundred (400) week cap" because the workers' compensation statutes are intended to provide compensation for employees who are disabled as a result of a work-related accident. Dorsett pointed out that terminating her temporary total disability benefits after 400 weeks would leave her "without income while she awaits maximum medical improvement, which may not be for some time, if ever." Finally, Dorsett asked the trial court to grant an interlocutory appeal on the issue of whether temporary total disability benefits may be extended beyond 400 weeks when an employee fails to attain maximum medical improvement during the 400-week period.

The trial court granted Wausau's motion to continue the trial, but also ordered Wausau to pay temporary total disability benefits until Dorsett attains maximum medical improvement, even if the payment period exceeded 400 weeks. The trial court granted Wausau permission to seek an interlocutory appeal from its order. The trial court also granted Dorsett permission to seek an interlocutory appeal "to interpret the issue of first impression of whether [Dorsett] is entitled to temporary total disability benefits beyond the four hundred week point."[4]

We granted Wausau's and Dorsett's applications for interlocutory appeal. We now reverse the trial court and hold that temporary total disability benefits are statutorily limited to 400 weeks.

## II. Standard of Review
Whether the trial court erred in awarding Dorsett temporary total disability benefits in excess of 400 weeks is a legal issue, involving statutory interpretation, which we review de novo with no presumption of correctness afforded to the trial court's conclusions. Gray v. Cullom Machine, Tool & Die, 152 S.W.3d 439, 443 (Tenn. 2004); Kyle v. Williams, 98 S.W.3d 661, 663-64 (Tenn. 2003); Ki v. State, 78 S.W.3d 876, 879 (Tenn. 2002).

## III. Statutory Construction
We start from the premise that "'[w]hile the Workers' Compensation Act is to be liberally construed for the employee's benefit, that policy does not authorize the amendment, alteration or extension of its provisions beyond its obvious meaning.'" Wilkins v. Kellogg Co., 48 S.W.3d 148, 152 (Tenn. 2001) (quoting Pollard v. Knox County, 886 S.W.2d 759, 760 (Tenn. 1994)). "This premise is simply a specific application of the most basic rule of statutory construction: courts must attempt to give effect to the legislative purpose and intent of a statute, as determined by the ordinary meaning of its text, rather than seek to alter or amend it." Id. at 152. When a statute lacks

---

[4]The trial court also granted Dorsett permission to seek an interlocutory appeal on the issue of "whether [Dorsett] is entitled to permanent and total disability benefits if she has not reached maximum medical improvement by the time four hundred weeks have passed since the injury." Although Dorsett initially raised this issue in her application, her supplemental brief did not address this issue. We have found no authority suggesting that Dorsett should be considered permanently and totally disabled based solely upon her failure to attain maximum medical improvement within 400 weeks.

contradiction or ambiguity, courts are not at liberty to depart from the words of the statute. Gleaves v. Checker Cab Transit Corp., 15 S.W.3d 799, 803 (Tenn. 2000). If "the language contained within the four corners of a statute is plain, clear, and unambiguous, the duty of the courts is simple and obvious, 'to say sic lex scripta, and obey it.'" Hawk v. City of Westmoreland, 960 S.W.2d 10, 16 (quoting Carson Creek Vacation Resorts, Inc. v. State Dept. of Revenue, 865 S.W.2d 1, 2 (Tenn. 1993)). Therefore, "'[i]f the words of a statute plainly mean one thing they cannot be given another meaning by judicial construction.'" Gleaves, 15 S.W.3d at 803 (quoting Henry v. White, 250 S.W.2d 70, 72 (Tenn. 1952)). Courts instead must "'presume that the legislature says in a statute what it means and means in a statute what it says there.'" Id. at 803 (quoting Jackson v. Jackson, 210 S.W.2d 332, 334 (Tenn. 1948)). Finally, a court must not question the "reasonableness of [a] statute or substitut[e] [its] own policy judgments for those of the legislature." Id. at 803 (quoting BellSouth Telecomms., Inc.v. Greer, 972 S.W.2d 663, 673 (Tenn. Ct. App. 1997)). Applying these familiar rules, we conclude that an employer's liability for temporary total disability benefits is limited to 400 weeks.

### IV. Analysis

The Workers' Compensation Act classifies compensable disabilities into four distinct categories: (1) temporary total disability; (2) temporary partial disability; (3) permanent partial disability; and (4) permanent total disability. Tenn. Code Ann. § 50-6-207 (1999 & 2004 Supp.); Cleek v. Wal-Mart Stores, 19 S.W.3d 770, 776 (Tenn. 2000); Redmond v. McMinn County, 354 S.W.2d 435, 437 (Tenn. 1962). Employees are entitled to compensation for each class of disability resulting from a single compensable injury for which they qualify. Redmond, 354 S.W.2d at 437. However, unless an employee is adjudged to be entitled to permanent total disability benefits,[5] the disability benefits that an employee may receive for a single injury may not exceed the "maximum total benefit." See Tenn. Code Ann. § 50-6-205(b)(1) (1999 & 2004 Supp.) ("The total amount of compensation payable under this part shall not exceed the maximum total benefit . . . in any case, exclusive of travel reimbursement, medical, hospital and funeral benefits."); Vinson v. United Parcel Serv., 92 S.W.3d 380, 384 (Tenn. 2002). This statutory limitation is defined as follows:

> "Maximum total benefit" means the sum of all weekly benefits to which a worker may be entitled; and . . . [f]or injuries occurring on or after July 1, 1992, the maximum total benefit shall be four hundred (400) weeks times the maximum weekly benefit except in instances of permanent total disability . . . .

Tenn. Code Ann. § 50-6-102(13)(C) (1999) (recodified at § 50-6-102(14) (2004 Supp.). Although we have never been squarely faced with the issue raised in this interlocutory appeal, we have previously acknowledged that the 400-week maximum total benefit limitation applies to temporary disability benefits. Vinson, 92 S.W.3d at 384 (Tenn. 2002) (citing Tennessee Code Annotated section 50-6-102(13)(C) and stating that "[p]ursuant to the statutory scheme, temporary disability benefit payments may not exceed 400 weeks"). Having thoroughly considered the issue, we now

---

[5]Awards of permanent total disability are not subject to the maximum total benefit. See Tenn. Code Ann. § 50-6-207(4)(A)(i).

hold that the 400-week statutory limitation applies to temporary total disability benefits. The statutory definition of maximum total benefit is clear. The only category of disability benefits exempted from this 400-week limitation is permanent total disability benefits. Thus, we conclude that the maximum total benefit 400-week limitation applies to temporary total disability benefits.

In arguing that the maximum total benefit does not apply, Dorsett points out that Tennessee Code Annotated section 50-6-207(2) & (3) (1999 and 2004 Supp.), which provide the method for calculating temporary partial disability benefits and permanent partial disability benefits, specifically mention the 400-week limitation, while the statute which provides the method for calculating temporary total disability benefits, Tennessee Code Annotated section 50-6-207(1) (1999) (recodified at § 50-6-207(1)(A) (2004 Supp.), does not mention the 400-week limitation. Dorsett maintains that had the legislature intended to limit temporary total disability benefits, it would have included the 400-week limitation in section -207(1). As support for her argument, Dorsett relies upon Bomely v. Mid-Am. Corp., 970 S.W.2d 929 (Tenn. 1998), in which this Court held that the 400-week maximum total benefit limitation does not apply to permanent total disability benefits.

Dorsett's reliance is misplaced. Although we noted in Bomely that the statute providing the method for calculating permanent total disability benefits did not mention the 400-week limitation, we held that the 400-week limitation did not apply "[b]ecause the statutory definition of maximum total benefit exempts permanent total disability awards from the 400-week limitation . . . ." Id. at 933. In contrast, the statutory definition of "maximum total benefit" does not expressly exempt temporary total disability benefits from the 400-week limitation. Accordingly, we hold that the maximum total benefit applies to temporary total disability benefits. We conclude therefore that the trial court erred in ordering Wausau to pay temporary total disability benefits in excess of this statutory 400-week limitation.

We are aware that the maximum total benefit, and our application of it, places Dorsett in a difficult position. As recently as October 8, 2004, Dr. King, Dorsett's treating physician, opined that she had not attained maximum medical improvement and thus refused to assign her a permanent disability rating. Based upon this testimony, Wausau sought and obtained a continuance of the trial.[6] Although we are sympathetic to Dorsett's situation, this Court has no authority to alter the statutory definition of maximum total benefit. Whether this statutory definition should be revised to exclude temporary total disability benefits from the 400-week limitation is a question for the legislature, not the judiciary.

## V. Conclusion

---

[6]Over ten months have passed since Dr. King was deposed. Dorsett may have now attained maximum medical improvement such that on remand Dr. King may be able to evaluate whether Dorsett has sustained permanent disability from her condition. Expeditiously resolving this case would appear to be in the best interest of all involved.

-6-

        We hold that the maximum total benefit of 400 weeks applies to temporary total disability benefits.  Thus, Wausau's liability to Dorsett for temporary total disability benefits is limited to the statutory maximum total benefit of 400 weeks.  Accordingly, we reverse the judgment of the trial court ordering Wausau to pay temporary total disability benefits in excess of 400 weeks.  We remand this case to the trial court for further proceedings consistent with this decision.  Costs of this appeal are taxed to the defendant-appellee, Vivian Alvina Dorsett.


_____

FRANK F. DROWOTA III,
CHIEF JUSTICE