IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
November 4, 2009 Session

## CITY OF HARRIMAN, TENNESSEE v. ROANE COUNTY ELECTION COMMISSION, ET AL.

Appeal from the Chancery Court for Roane County
No. 16010     Frank V. Williams, III, Chancellor

No. E2008-02316-COA-R3-CV  - FILED DECEMBER 28, 2009

This is a contest between two neighboring towns in Roane County over common territory that both have purported to annex.  The defendant, Kingston, sought to add the territory through a successful referendum election conducted on February 5, 2008.  The plaintiff, Harriman, sought to add the territory through its annexation ordinance No. 200801-1 adopted on first reading January 28, 2008. The disputed territory is outside the "[u]rban growth boundary" of both municipalities; it is within the "[r]ural area" of Roane County as those terms are respectively defined in Tenn. Code Ann. § 6-58-101 (7) and (6) (2005).  Harriman's complaint to void the Kingston referendum asserts that Harriman's ordinance takes priority because Harriman, as a larger municipality, is granted statutory priority.  Kingston argues that the Harriman ordinance was of no effect because Harriman did not first secure an amendment to its urban growth boundary before passing the ordinance.  Harriman responded that it did in fact "propose" an amendment and that a proposal was all that was required under Tenn. Code Ann. § 6-58-111(d)(1) (Supp. 2009).  The parties tried the case on stipulated facts. The trial court agreed with Kingston and dismissed Harriman's complaint without reaching the issue of priority.   Harriman appeals, asking us to reverse and remand for a determination of the pretermitted issues.  We vacate the judgment of the trial court and remand for further proceedings.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court
Vacated; Case Remanded**

CHARLES D. SUSANO, JR., J., delivered the opinion of the court, in which HERSCHEL P. FRANKS, P.J., and JOHN W. MCCLARTY, J., joined.

Harold D. Balcom, Jr., Kingston, Tennessee, for the appellant, City of Harriman.

Thomas M. Hale, Knoxville, Tennessee, and Jack H. McPherson, Jr., Kingston, Tennessee, for the appellee, City of Kingston.

No appearance on behalf of Roane County Election Commission.

**OPINION**

I.

The territory in dispute is part of what was once known as "Midtown." Midtown was incorporated as a municipality in 1998 under an exception to the general law of municipal incorporation, which exception was enacted to benefit a limited number of small communities. We declared the exception unconstitutional in *Town of Huntsville v. Duncan*, 15 S.W.3d 468 (Tenn. Ct. App. 1999), and, as a consequence of our ruling, Midtown ceased to exist. The area known as Midtown was accounted for in Roane County's initial growth plan and map, a copy of which became trial exhibit 1. When Midtown ceased to exist, its territory became part of the rural area of Roane County and a target for expansion by neighboring municipalities.

As previously noted, the parties provided a detailed stipulation of facts upon which the case was tried. The stipulations pertinent to this appeal are as follows, with the original numbering omitted:

> Public Chapter 1101 of the Act of 1998 (the "Act"), generally codified within Tenn. Code Ann. §§ 6-58-101, *et seq*., established a growth policy for the State of Tennessee which included procedures for the development in each county of a countywide growth plan that would guide and direct new development in each county. The Act included provisions requiring the appointment in each county of a coordinating committee whose members were required to develop the county growth plan.
>
> The procedures for the development of a growth plan were carried out by officials within Roane County. The Growth Plan was adopted and later approved in 2001 as required by the Act. The Act prohibits the Growth Plan from being amended for three years.
>
> In calendar year 2005, Harriman and Rockwood requested that the coordinating committee for Roane County be reconvened for the purpose of reviewing the Growth Plan for the stated purpose of considering amending the Growth Plan by modifying the urban growth boundaries of those municipalities.
>
> The coordinating committee met several times during 2005 and 2006. Although the coordinating committee discussed a number of proposed urban growth boundaries, as of October 25, 2006 Harriman, Kingston and Oliver Springs had not yet settled upon what amendments to request in their urban growth boundaries.
>
> On September 12, 2007, County Mayor Mike Farmer informed the members of the coordinating committee that it would reconvene at

some point within the next six weeks and requesting that any municipality within Roane County planning to propose an amendment to its Urban Growth Boundary to forward information about the proposal.

No amendments to the Growth Plan have been officially adopted and the coordinating committee has not met since the Harriman's City Council adopted Resolution R1007-1.

After several meetings and public hearings, Harriman, through its City Council acting in special session on October 17, 2007, adopted Resolution Number R1007-1 approving the September 14, 2007 City of Harriman Urban Growth Boundary Report and related map as its proposed amendment to its urban growth boundary, and directing its designated members of the coordinating committee to propose such amendment to the coordinating committee.

On December 27, 2007, Kingston, acting through its City Council, adopted Resolution Number 7-12-27 resolving among other things to hold a referendum pursuant to Tenn. Code Ann. § 6-51-105 to annex territory that was outside of its urban growth boundary as it existed in the approved Growth Plan.

* * *

The area Kingston proposed for annexation by referendum included the area that Harriman Resolution Number R1007-1 authorized its coordinating committee members to propose to the coordinating committee as Harriman's amended urban growth boundary.

Throughout January 2008, Harriman took steps preparatory to the consideration of an annexation ordinance to annex areas of Roane County that are outside of Harriman's approved urban growth boundary, but which are within the area that Kingston was seeking to annex by referendum.

On January 28, 2008, Harriman acting through its City Council adopted on first reading ordinance 200801-1, an ordinance annexing a portion of the Midtown area adjoining the present corporate limits of the City of Harriman, and to incorporate same within the corporate boundaries of the City of Harriman, Tennessee.

On February 5, 2008, the Roane County Election Commission held the referendum of those residing within the area that Kingston

proposed for annexation pursuant to Resolution Number 7-12-27 and the annexation was unanimously approved. . . .

Harriman Ordinance 200801-1 has not been considered on second reading.

On May 21, 2008, Harriman Regional Planning Commission approved a plan of services relating to Harriman Ordinance Number 200801-1.

With the exception of the finalization of Ordinance Number 200801-1, both Harriman and Kingston in the adoption of the motions, resolutions and ordinances complied with all formal requirements such as publications, notice and hearings.

In addition to the above stipulations, the proof included stipulated exhibits which mostly corroborated or illuminated the stipulations. The parties treated the question of whether Harriman could annex territory outside its urban growth boundary by ordinance as a threshold question, beyond which the trial court did not need to proceed if it ruled adversely to Harriman. As previously noted, the trial court did rule against Harriman on this issue, and pretermitted any further determinations. We think it helpful to quote the following passages from the trial court's judgment:

The Complaint seeks to set aside the annexation referendum successfully conducted by Kingston that incorporated within its municipal limits certain territory that was outside of its approved urban growth boundary as defined by the Comprehensive Growth Plan Legislation, codified at Tenn. Code Ann. § 6-58-101, *et seq.* (The "Act"). The basis for the relief requested by Harriman was that it had proposed and commenced the process to amend its urban growth boundary to include the same territory that was the subject of the Kingston referendum, and thus, contended that it had complied with the provisions of the Act that allow a municipality to annex by ordinance such territory, and that as a result it was legally permissible for it to annex such territory before the amendment process was completed. The territory that Harriman sought to annex by ordinance was, in fact, also outside of its approved urban growth boundary, but was within Roane County's rural area as defined by the Act. The City of Kingston defended on the basis that the actions of Harriman in attempting to annex by ordinance territory outside of its approved urban growth boundary exceeded its authority as granted by the Act, specifically by Tenn. Code Ann. § 6-58-111, and therefore, that Harriman's ordinance of annexation was void and of no effect.

Having considered all of the referenced pleadings, evidence, arguments and parts of the record, this Court finds and concludes . . .

> that Harriman's ordinance of annexation, being Ordinance 200801-1, is void and of no effect because Harriman's urban growth boundary was not amended to include the area it sought to annex by way of the procedures described in and required by Tenn. Code Ann. § 6-58-111(c) and (d).

The trial court therefore found "that the City of Harriman's ordinance of annexation, being void and of no effect, creates no conflict with the successful annexation by referendum of the same territory conducted by Defendant City of Kingston" and dismissed the complaint.

## II.

The parties each identify two separate issues, but we believe there is one dispositive issue that is best focused as stated by Kingston:

> Was the trial court correct in concluding that Tenn. Code Ann. § 6-58-111(d)(1) requires that a municipality seeking to annex by ordinance territory laying outside of its approved urban growth boundary must amend its urban growth boundary following the procedure in Tenn. Code Ann. 6-58-104?

## III.

The interpretation of a statute and its application to undisputed facts involve questions of law. *U.S. Bank, N.A. v. Tenn. Farmers Mut. Ins. Co.*, 277 S.W.3d 381, 386 (Tenn. 2009); *Waldschmidt v. Reassure Am. Life Ins. Co.*, 271 S.W.3d 173, 175 (Tenn. 2008). A trial court's conclusions of law are reviewed *de novo* upon the record with no presumption of correctness. *Perrin v. Gaylord Entm't Co.*, 120 S.W.3d 823, 826 (Tenn. 2003); *Ganzevoort v. Russell*, 949 S.W.2d 293, 296 (Tenn. 1997).

Recently, in *Waldschmidt*, the Supreme Court provided the following guidance for issues of statutory construction:

> When called upon to construe a statute, the courts must first ascertain
>
> and then give full effect to the General Assembly's intent and purpose. *Auto Credit of Nashville v. Wimmer,* 231 S.W.3d 896, 900 (Tenn. 2007); *State ex rel. Pope v. U.S. Fire Ins. Co.,* 145 S.W.3d 529, 534-35 (Tenn. 2004). We must construe statutes as we find them, *Jackson v. Jackson,* 186 Tenn. 337, 342, 210 S.W.2d 332, 334 (1948), and therefore, our search for a statute's meaning and purpose must begin with the words of the statute. *Blankenship v. Estate of Bain,* 5 S.W.3d 647, 651 (Tenn. 1999). We must (1) give these words their natural and ordinary meaning, (2) consider them in the context of the entire statute, and (3) presume that the General Assembly

intended that each word be given full effect. *Lanier v. Rains*, 229 S.W.3d 656, 661 (Tenn. 2007); *State v. Flemming*, 19 S.W.3d 195, 197 (Tenn. 2000). When a statute's language is clear and unambiguous, we need not look beyond the statute itself, *State v. Strode*, 232 S.W.3d 1, 9-10 (Tenn. 2007); *Corum v. Holston Health & Rehab. Ctr.*, 104 S.W.3d 451, 454 (Tenn. 2003), but rather, we must simply enforce it as written. *Wausau Ins. Co. v. Dorsett*, 172 S.W.3d 538, 543 (Tenn. 2005); *Miller v. Childress*, 21 Tenn. (2 Hum.) 320, 321-22 (1841).

271 S.W.3d at 176 .

IV.

In Tenn. Code Ann. § 6-58-111, the General Assembly has clearly provided an exception to the general rule that a municipality must confine its growth to the territory within its urban growth boundary. That "exception" language is the focus of this appeal. It provides as follows:

> (c) A municipality may not annex territory by ordinance beyond its urban growth boundary without following the procedure in subsection (d).

> (d)(1) If a municipality desires to annex territory beyond its urban growth boundary, the municipality shall first propose an amendment to its urban growth boundary with the coordinating committee under the procedure in § 6-58-104.

> (2) As an alternative to proposing a change in the urban growth boundary to the coordinating committee, the municipality may annex a territory located in the county's planned growth area or rural area by referendum as provided in §§ 6-51-104 and 6-51-105.

The General Assembly clearly intends that by "following the procedure in subsection (d)" a "municipality may . . . annex territory by ordinance beyond its urban growth boundary."

Kingston is in no position to argue that there is absolutely no exception to the general rule that a municipality may not annex outside its urban growth boundary, because Kingston itself has

admittedly reached beyond its urban growth boundary to conduct its own annexation by referendum.[1] As we see it, this puts Kingston in the position of arguing inconsistently that while subsections (c) and (d)(2) combined mean exactly what they say in allowing an annexation by referendum outside the city's growth boundary, subsections (c) and (d)(1) combined have only illusory meaning, *i.e.*, that an annexation by ordinance can *only* occur within a fully amended growth area. Kingston's position is illuminated by its statement of the issue which suggests that the only way a city may annex by ordinance "outside of its approved urban growth boundary" is to first "amend its urban growth boundary." If this is true, then we fail to see how a city would be annexing *outside* its growth boundary. Kingston's reading of the pertinent language in Tenn. Code Ann. § 6-58-111 would completely eliminate the possibility of a municipality annexing "by ordinance beyond its urban growth boundary." Since this interpretation would negate the meaning of words and phrases in such a way as to effectively eliminate the exception, we proceed with skepticism.

Notwithstanding our skepticism, we will turn our full attention to the key question of what is meant by the language in subsections (c) and (d) of Tenn. Code Ann. § 6-58-111. We naturally begin with subsection (c) under which a municipality comes within the exception to the general rule by "following the procedure in subsection (d)." Kingston argues that the only procedure in subsection (d) is "the procedure in § 6-58-104" of amending the urban growth boundary, therefore a city has not followed the procedure unless and until it has achieved an amendment of its growth boundary. Kingston's argument is contrary to the express language of the statute. What a municipality must follow, according to subsection (c), is "the procedure in subsection (d)." The procedure that is provided for a municipality in subsection (d), which we will later examine in more detail, is to either, under (d)(2), ignore the urban growth boundary completely and annex by referendum or, under (d)(1), "first propose an amendment to its urban growth boundary."

Before examining the key language in detail, we will first address Kingston's assertion that "proposing an amendment to an urban growth boundary is not a 'procedure,' but is merely what triggers the procedure." Again, we find Kingston's argument to be in defiance of the statutory language. First, it was the legislature that described subsection (d) as containing a procedure and we do not think it fitting that one municipality or even this court should ignore that description. More importantly, there clearly is a "procedure" that a municipality must follow before it may "propose an amendment to its urban growth boundary" and there is a "procedure," found in Tenn. Code Ann.

---

[1]Kingston quotes a lengthy section of ***Tipton v. City of Knoxville***, 205 S.W.3d 456, 459-60 (Tenn. Ct. App. 2006), including the following: "Once a county and its municipalities adopt a growth plan and it is approved by the local government planning advisory committee, all land use decisions in the county must conform to the growth plan. Tenn. Code Ann. § 6-58-107. Municipal governments in such counties are still permitted to annex territory upon their own initiative . . . but *they may only do so within their urban growth boundary*." ***Id***. at 460 (emphasis added). As noted, Kingston cannot seriously contend that the language quoted from ***Tipton*** prevents all annexations outside a municipality's urban growth boundary because Kingston has acted on its own initiative to annex outside its urban growth boundary. We read the statement in ***Tipton*** as general background material put down with a broad brush to help the reader understand the general import of the Comprehensive Growth Plan rather than a general statement of binding law provided on an issue that was not before the court in ***Tipton***. We should also note that even if a municipality may annex outside its growth area, it is abundantly clear that one municipality may not annex territory that lies within another municipality's urban growth boundary. Tenn. Code Ann. § 6-58-111(a).

§ 6-58-104, by which that proposal must be submitted. The latter provides that after expiration of the three-year initial moratorium period on amending the original county growth plan, "any municipality . . . or the county . . . may propose an amendment to the growth plan *by filing notice with the county mayor . . . and with the mayor of each municipality in the county*." Tenn. Code Ann. § 6-58-104(d)(1)(emphasis added). "Before a municipal legislative body may propose urban growth boundaries to the coordinating committee, the municipality shall conduct at least two (2) public hearings." Tenn. Code Ann. § 6-58-106 (a)(3) (2005). Also, "[b]efore formally proposing urban growth boundaries to the coordinating committee, the municipality shall": (1) develop population growth projections; (2) determine and report the costs of infrastructure, services and facilities for the current and projected municipal boundaries; (3) determine and report the need for additional land suitable for high density, industrial, commercial and residential use; (4) determine and report the existence of and impact on agricultural, forestry and recreational lands. *Id*. § 106(a)(2). Thus, we reject the argument that "proposing an amendment to an urban growth boundary is not a 'procedure.'" To propose an amendment to its urban growth boundary, a municipality must first follow the preliminary procedures set out in 6-58-106, and then follow the procedure of "filing notice with the county mayor . . . and with the mayor of each municipality of the county" set out in 6-58-111(d)(1). It is true that to achieve the amendment, the municipality must push, pull or pray its proposal through the remaining "procedures" in 6-58-104 for "establishing the original plan" but those "procedures" go beyond the "procedure" of *proposing an amendment*.

This leads us back to the key language of subsection (d)(1) which we have characterized as an exception. To qualify for the exception, "the municipality shall first *propose an amendment* to its urban growth boundary with the coordinating committee under the procedure in § 6-58-104." The specific question is whether a fully approved amendment is necessary as argued by Kingston, or whether it is enough for the annexing city to simply commence the process of amending by providing notice to the key players that it is submitting an amended plan for consideration. The key word of the key phrase is the word "propose." The term "propose" is not defined in the Act. It is appropriate, therefore, to look to the dictionary as "the usual and accepted source" for the "natural and ordinary meaning" of the term. *English Mountain Spring Water v. Chumley*, 196 S.W.3d 144, 148 (Tenn. Ct. App. 2005). The principal definition of "propose" is "to form or declare a plan or intention" and all dictionary definitions that we have found define the word as something *intended* rather than something *accomplished*. Webster's Third New International Dictionary at 1819 (Merriam Webster 1991).

We must, however, go beyond looking at the dictionary definition of one word, to look at the context in which the words are used. *Waldschmidt,* 271 S.W.3d at 176 n.1. The context also supports Harriman's interpretation and works against Kingston's interpretation adopted by the trial court. The terminology is contained within an explicit exception to a general rule, *i.e.*, that a city may only annex inside its urban growth boundary. It is only logical therefore, that the area being annexed as an exception is something that has not yet been accepted as being within the city's urban growth boundary. The other statutory provisions we have already discussed support the conclusion that to "propose an amendment" to a growth boundary is to submit an amendment for consideration

by the full committee as opposed to achieving acceptance of the amendment as the approved growth boundary. Tenn. Code Ann. § 6-58-104 (d)(1)( "may propose an amendment to the growth plan by filing notice"); Tenn. Code Ann. § 6-58-106 (a)(3)(two public hearings mandatory before a municipal body "may propose urban growth boundaries to the coordinating committee"); and Tenn. Code Ann. § 6-58-106 (a)(2)(imposes numerous requirements on a city "before proposing urban growth boundaries to the coordinating committee"). "The different parts of a statute reflect light upon each other, and statutory provisions are regarded as *in pari materia* where they are parts of the same act." *Faust v. Metropolitan Government of Nashville*, 206 S.W.3d 475, 490 (Tenn. Ct. App. 2006) (*quoting* 73 Am.Jur.2d *Statutes* § 105 (2005)). Therefore, unless we are provided a compelling reason to do otherwise, we will attribute the same meaning to "propose" as used in 6-58-111(d)(1) that it carries in 6-58-104 and 6-58-106.

Frankly, the only argument advanced by Kingston that gives us any pause is the argument that allowing a city to annex without securing an amendment to its growth boundary defeats the policies behind the Act. The General Assembly explicitly stated the intent underlying the Act as follows:

> With this chapter, the general assembly intends to establish a comprehensive growth policy for this state that:
>
> (1) Eliminates annexation or incorporation out of fear;
>
> (2) Establishes incentives to annex or incorporate where appropriate;
>
> (3) More closely matches the timing of development and the provision of public services;
>
> (4) Stabilizes each county's education funding base and establishes an incentive for each county legislative body to be more interested in education matters; and
>
> (5) Minimizes urban sprawl.

Tenn. Code Ann. § 6-58-102 (2005). It is true enough that allowing a city to annex on its own initiative outside the area that is agreed upon or adjudicated to be its "growth boundary" would seem to contravene the stated intent of the Act. Were there some acceptable alternative to the meaning of "propose an amendment" that would preserve an exception and make better sense under the Act, we would give it serious consideration, but there is none. There are only three alternative meanings we can conceive. One is as proposed by Kingston that a municipality must follow the procedure to the point of securing an amendment of its growth boundary before it can qualify for the exception. However, as we have made abundantly clear, that alternative eliminates the exception altogether. Another alternative is that to qualify for the exception the municipality must follow the procedure until it has exhausted all possible avenues for relief and lost. It makes no sense to this court that the General Assembly would enact the exception to allow a city to annex territory after its neighboring communities and a mediator and an arbitrator and the courts have determined that the city should not expand into that territory. See Tenn. Code Ann. §§ 6-58-104 and 105 (providing the

administrative and judicial "procedures" for achieving a growth plan). The third alternative is that a municipality qualifies for the exception by reaching some unidentified point of doing something more than proposing an amendment and something less than achieving the amendment. Surely if the legislature had intended the third alternative, it would have given some hint as to where the point of qualification lays, and surely it would not have explicitly defined the point of qualification in terms that it used elsewhere in the Act consistent with merely giving notice of the proposed plan. Thus, we can conceive of no alternative that is sensible and acceptable.

In summary, we hold that, in Tenn. Code Ann. § 6-58-111 (c), the General Assembly intended and did provide an exception to the general rule against expanding outside a growth plan that allows a municipality to annex outside its urban growth boundary. A municipality qualifies for that exception by "following the procedure in [Tenn. Code Ann. § 6-58-111] subsection (d)." We further hold that to follow the procedure of Tenn. Code Ann. § 6-58-111 (d) the municipality must either (1) "first propose an amendment to its urban growth boundary" or (2) conduct its annexation by referendum. Finally, we hold that a municipality has qualified under § 6-58-111(d)(1) if it has acted under Tenn. Code Ann. § 6-58-104(d)(1) to "propose an amendment to the growth plan by filing notice with the county mayor . . . and . . . the mayor of each municipality in the county." We have reached these holdings by looking for the legislative intent, in light of the natural and ordinary meaning of the statutory language, in context, and giving each word and phrase effect with the goal of rendering no language ineffective. We believe there is no sensible or acceptable alternative interpretation consistent with these directives. Since the parties have stipulated that Harriman's notice and other such preliminaries complied with all formal requirements, we hold that Harriman qualified under Tenn. Code Ann. § 6-58-111(d)(1) to annex by ordinance.

V.

The judgment of the trial court is vacated. Costs on appeal are taxed to the appellee, City of Kingston, Tennessee. This case is remanded, pursuant to applicable law, for consideration of the issues that were pretermitted and such other proceedings as are necessary and consistent with this opinion.

_____
CHARLES D. SUSANO, JR., JUDGE

-10-