IN THE SUPREME COURT OF TENNESSEE
SPECIAL WORKERS' COMPENSATION APPEALS PANEL
AT KNOXVILLE
December 2, 2015 Session

## DOUGLAS BRENT WALKER v. G.UB.MK CONSTRUCTORS

**Appeal from the Circuit Court for Knox County**
**No. 256105      William T. Ailor, Judge**

---

**No. E2015-00346-SC-R3-WC-MAILED- MARCH 30, 2016**
**FILED-MAY 2, 2016**

---

In 2003, an employee sustained injuries to his spine, pelvis, and shoulder while working for his employer. In 2007, the trial court determined that the employee was permanently and totally disabled as a result of the work-related injury and that his employer was responsible for authorized future medical treatment directly related to the work-related injury. In 2013, the employee filed a motion to compel medical benefits, asserting that his employer had refused to pay for medical treatment determined to be reasonable and necessary by his authorized treating physician. The trial court denied the motion, and the employee appealed. The appeal has been referred to the Special Workers' Compensation Appeals Panel for a hearing and a report of findings of fact and conclusions of law pursuant to Tennessee Supreme Court Rule 51. We affirm the trial court's judgment.

**Tenn. Code Ann. § 50-6-225(e) (2008 & Supp. 2013) Appeal as of Right; Judgment of the Trial Court Affirmed**

KRISTI M. DAVIS, SP.J., delivered the opinion of the Court, in which SHARON G. LEE, C.J., and DON R. ASH, SR.J., joined.

Annie S. Duncan, Knoxville, Tennessee, for the appellant, Douglas Brent Walker.

Karen G. Crutchfield and Andrew J. Hebar, Knoxville, Tennessee, for the appellee, G.UB.MK Constructors.

## OPINION

### Factual and Procedural Background

On July 14, 2003, Douglas Brent Walker ("Employee") was injured in the course and scope of his employment with G.UB.MK Constructors ("Employer"). Employee was treated by Dr. Edward A. Workman for spinal, pelvic, and shoulder injuries. In July of 2007, the trial court found that Employee was permanently and totally disabled, allocating 75% of the disability to Employer and 25% of the disability to the Second Injury Fund. The trial court ordered that Employer was "responsible for authorized future medical treatment directly related to the injuries sustained in the accident of July 14, 2003."

In December of 2013, Employee filed a motion to compel medical benefits, for contempt of court, attorney's fees, and bad faith penalties. The motion sought an order requiring Employer "to authorize and pay for medical treatment and other benefits determined to be medically reasonable and necessary by [Dr. Workman]." The motion asserted that beginning in 2009, Employer repeatedly denied Employee medical treatment that was ordered and requested by Dr. Workman. The motion stated that "Dr. Workman has requested authorization and pre-certification for a series of trigger point injections, PNT,[1] and aquatic therapy[,] which Dr. Workman has documented to be reasonable and medically necessary for treatment of [Employee's] chronic pain and related depression resulting from his work-related injuries."

In support of his motion, Employee submitted an affidavit from Dr. Workman, who explained that following Employee's accident, Dr. Workman treated Employee for "chronic pain and for his pain induced depressive spectrum illness." After several years of treatment, however, Dr. Workman became unable "to contain [Employee's] pain by medications alone," due largely to "the presence of myofascial trigger points in the lumbar regions bilaterally from L-1 to S-1, and at various bilateral shoulder sites." As a result, Dr. Workman sought approval and pre-certification from Employer's insurance carrier for trigger point injections and PNT, which he said had been "immensely" helpful in the past in relieving Employee's chronic pain and depression. Dr. Workman stated, however, that the insurance carrier consistently denied the requested treatments following the utilization review process.[2] Dr. Workman explained:

Recently we sought pre-certification for the injections once again and they were denied via an "evaluation" of the patient by a physician who has never

---

[1] Percutaneous neuromodulation therapy.

[2] Attached to his motion, Employee included a number of records from the utilization review process, indicating multiple rejections of trigger point injections and PMT, as well as the rejection of aquatic therapy. Further, in January of 2014, Employee filed a supplemental affidavit from Dr. Workman, which was similar to Dr. Workman's original affidavit, but added that in 2013, Employer's insurance carrier had "approved only one injection when a series of at least twelve . . . ha[d been] shown to be medically necessary."

seen or examined him and clearly did not understand his condition or clinical situation. The physician claimed that the injections were medically unnecessary and that there was no evidence of their efficacy, despite the fact that the injections in the past have helped this patient immensely and kept him off highly addictive and side-effect laden narcotics. He also claimed that the request did not meet some unknown guidelines regarding the prior use of physical therapy, home strengthening and the presence of twitch responses. In fact, the patient . . . has had physical therapy in the past and this did not help. He does home stretching regularly and still needs the injections. We document on every visit that his trigger point exhibits the twitch response that the reviewer apparently did not see in our records.

Dr. Workman further indicated that Employee "meets all reasonable clinical guidelines for trigger point injections and PNT" and "would benefit from aquatic therapy." He also concluded that "without such treatments, there appear to be no further options for needed treatment."

In further support of his motion, Employee attached a number of medical records from Dr. Workman. These records reflect that Dr. Workman examined and treated Employee on a monthly basis from July of 2009 to November of 2013, setting forth detailed recommendations following each examination. On January 24, 2011, after the denial of trigger point injections, Dr. Workman made the following note in Employee's medical records:

1-First the reviewer claimed that we presented no information to show that the patient had palpable trigger points with a twitch response. On the prior injection notes, these were documented every single injection set. The[s]e are also described in terms which meet the "criteria" stated in every exam as above.
2-Secondly, the ODG "criteria" for trigger points are literally lifted from the Blue Cross criteria and guidelines for TENDER POINTS and their injection in FIBROMYALGIA. We are dealing with TRIGGER POINTS in MYOFASCIAL Pain, NOT FIBROMYALGIA; the ODG guidelines are completely irrelevant and apply to FIBROMYALGIA TENDER POINTS (see Blue [C]ross guidelines for such and the American Rheumatological Assn. guidelines; they are identical); now that they have lifted in toto and placed on TRIGGER POINTS guidelines by the questionable ODG system.

Similarly, in February of 2011, Dr. Workman noted as follows:

I have recommended a series of 12 sets of trigger point injections to the cervical and lumbar spine musculature due to emergence of trigger points

3

that are causing severe pain; the "review" by the carrier applied to Fibromyalgia tender points NOT myofascial trigger points. See above discussion about ODG guidelines for "trigger points and their injection" and BC/BS guidelines for fibromyalgia "Tender points and their injections." The guidelines are identical, but the diseases and objects of injection are TOTALLY different.[3]

Further, in May of 2011, Dr. Workman noted that he was "recommending Aqua Therapy twice a week for 8 weeks to help improve [Employee's] shoulder range of motion and help to decrease his pain flaring; this is the only option left as trigger point injections and PNT are consistently denied by the carrier."[4]

Employee also included his own affidavit, wherein he stated that trigger point injections and PNT had, in the past, made his life "much more pleasant" and that the treatments were effective in relieving his chronic pain and feelings of depression he had as a result of the pain. He explained that since the treatments had been denied, his pain has increased, his depression has gotten worse, and he has been told by others that his attitude has suffered. He said he would like to receive the trigger point injections, PNT, and aquatic therapy that Dr. Workman has recommended.

Employer responded that it had provided all reasonable and necessary medical treatment and that the only treatment that was denied was done so through the benefit review process. Employer relied on the affidavit of Dr. Jeffrey E. Hazlewood, who was designated to review the case as part of the utilization review appeal process. Dr. Hazlewood stated that after reviewing "all the medical records of [Employee] and documentation provided . . . by [Dr. Workman], as well as Utilization Review records," he concluded "within a reasonable degree of medical certainty, that the trigger point injections and [PNT were] not reasonable and necessary medical treatments for [Employee's] back pain." Employer also included the affidavit of Terrie Williams, the claims administrator assigned to Employee's workers' compensation claim, who asserted that all reasonable and necessary treatments had been paid and that the treatments Employee was seeking to compel had been determined not to be reasonable and/or necessary through the utilization review process.

In its response, Employer explained that Dr. Workman's requests for cervical and lumbar trigger point injections in July of 2009 were denied following utilization review by Dr. Scott Limpert, who determined that the requested services "d[id] not meet established standards of medical necessity," as "[i]t [was] premature at th[at] point to

---

[3] Dr. Workman made a similar note in March of 2011.

[4] Dr. Workman also noted his recommendation for aquatic therapy in June of 2011.

administer . . . trigger point injections." As part of the utilization review appeal process, Dr. Limpert's decision was upheld by Dr. Terrence Wilson, who opined as follows:

> Current clinical guidelines do not endorse the repeated use of trigger point injections as the primary mode of treatment for myofascial syndrome; rather, the use of trigger point injections is deemed to be limited to the extinction of specific foci that are hindering progress during a more active course of treatment with postural and ergonomic correction, stretching and flexibility training and exercise, manual medicine intervention and/or therapeutic exercise. The medical necessity for the continuation of trigger point injections as a primary means of treating residual myofascial dysfunction can[]not be established based upon the clinical documentation submitted at this time.

Employer further noted that in December of 2010, Dr. Workman's request for trigger point injections was again denied following utilization review by Dr. Phillip Beaulieu.[5]

In addition, Dr. Workman's May 2009 request for PNT was denied after Dr. Sankar Pemmaraju found that PNT was an unproven alternative for long-term pain management and that there were no objective findings to justify the need for PNT. Employer also noted that Dr. Workman's request for aquatic therapy in May of 2011 was denied after Dr. Anna-Louise Molette found that the request was not medically necessary because the treatment was typically used for patients with severe arthritis or patients who needed exercises or rehabilitation that required minimizing weight bearing and that there was no documentation or imaging that supported this treatment for Employee.

After a hearing, the trial court denied Employee's motion to compel medical benefits, as well as his request for attorney's fees and bad faith penalties. Employee has appealed from that decision.

## Standard of Review

Our standard of review of factual issues in a workers' compensation case is de novo upon the record of the trial court, accompanied by a presumption of correctness of the trial court's factual findings, unless the preponderance of the evidence is otherwise. Tenn. Code Ann. § 50-6-225(e)(2) (2014); *Whirlpool Corp. v. Nakhoneinh*, 69 S.W.3d 164, 167 (Tenn. 2002) (citing Tenn. Code Ann. § 50-6-225(e)(2); *Cutler-Hammer v. Crabtree*, 54 S.W.3d 748, 753 (Tenn. 2001)). When issues of credibility of witnesses and the weight to be given their in-court testimony are before the reviewing court, considerable deference must be accorded to the factual findings of the trial court.

---

[5] Dr. Workman's request for trigger point injections was denied a third time by Dr. Yusuf Mosuro, but Dr. Mosuro's records are not included in the record.

*Richards v. Liberty Mut. Ins. Co.*, 70 S.W.3d 729, 732 (Tenn. 2002) (citing *Seals v. England/Corsair Upholstery Mfg. Co.*, 984 S.W.2d 912, 915 (Tenn. 1999)); *see also Rhodes v. Capital City Ins. Co.*, 154 S.W.3d 43, 46 (Tenn. 2004) (citing *Tobitt v. Bridgestone/Firestone, Inc.*, 59 S.W.3d 57, 61 (Tenn. 2001)) ("The trial court's findings with respect to credibility and weight of the evidence may generally be inferred from the manner in which the court resolves conflicts in the testimony and decides the case."). When expert medical testimony differs, it is within the trial judge's discretion to accept the opinion of one expert over another. *Hinson v. Wal-Mart Stores, Inc.*, 654 S.W.2d 675, 676-77 (Tenn. 1983) (citing *Combustion Eng'g, Inc. v. Kennedy*, 562 S.W.2d 202 (Tenn. 1978)). This Court, however, may draw its own conclusions about the weight and credibility to be given to expert testimony when all of the medical proof is by deposition. *Krick v. City of Lawrenceburg*, 945 S.W.2d 709, 712 (Tenn. 1997) (citing *Orman v. Williams Sonoma, Inc.*, 803 S.W.2d 672, 676-77 (Tenn. 1991)). Questions of law are reviewed de novo with no presumption of correctness afforded to the trial court's conclusions. *Gray v. Cullom Machine, Tool & Die, Inc.*, 152 S.W.3d 439, 443 (Tenn. 2004) (citing *Tucker v. Foamex, L.P.*, 31 S.W.3d 241, 242 (Tenn. 2000)).

**Analysis**

*Authorization for Medical Treatment*

Employee argues that the trial court erred in denying his motion to compel medical benefits because, as the treating physician, Dr. Workman's course of treatment was presumed medically reasonable and necessary. Employee contends that Dr. Hazlewood's affidavit was insufficient to overcome the presumption because neither he, nor the physicians involved in the utilization review process, personally examined Employee. Employer argues that the evidence does not preponderate against the trial court's judgment.

As provided by Tennessee Code Annotated section 50-6-204(a)(1)(A):

> The employer or the employer's agent shall furnish, free of charge to the employee, such medical and surgical treatment, medicine [and other medical services or devices] . . . as ordered by the attending physician and hospitalization, . . . made reasonably necessary by accident as defined in the [Workers' Compensation Act].

Tenn. Code Ann. § 50-6-204(a)(1)(A) (2014). Treatment requested and furnished by the designated authorized treating physician for work-related injuries is presumed to be medically necessary and reasonable. *Russell v. Genesco, Inc.*, 651 S.W.2d 206, 211 (Tenn. 1983). However, employers may use the utilization review process to evaluate whether a physician's course of treatment is necessary, appropriate, and efficient. Tenn. Code Ann. § 50-6-102(18) (1999 & Supp. 2003) (defining "[u]tilization review" as the

6

"evaluation of the necessity, appropriateness, efficiency and quality of medical care services provided to an injured or disabled employee based on medically accepted standards and an objective evaluation of the medical care services provided"); *see also id.* § 50-6-122 (1999 & Supp. 2003) (providing that, along with ensuring the availability of quality medical care services to injured and disabled employees, it is the intent of the Legislature "to control increasing medical costs in workers' compensation matters by establishing cost control mechanisms to ensure cost-effective delivery of medical care services by employing a program of medical case management and a program to review the utilization and quality of medical care services"); *id.* § 50-6-124 (1999 & Supp. 2003) (providing for a system of utilization review established by the commissioner of labor and workforce development of selected healthcare providers for employees claiming benefits under the Workers' Compensation Act).[6]

In denying Employee's motion to compel medical benefits, the trial court noted as follows:

> Dr. Jeffrey Hazlewood is a licensed Tennessee physician specializing in pain management and physical rehabilitation in Lebanon, Tennessee, and in his capacity as the Designee of the Medical Director of the Tennessee Department of Labor and Workforce Development . . . reviewed the medical and other records submitted through the Utilization Review process, and the proposed trigger point injections, PNT's, and a[]quatherapy treatment prescribed by Dr. Edward Workman, the medical peer review reports provided by other medical doctors as a part of the Utilization Review Process, and opined that he was in agreement with the reviewing doctors in the Utilization Review Process that such treatment was not reasonable and necessary for the Employee's current diagnosis and treatment, and provided an Affidavit in this cause confirming his review of

---

[6] At the time of Employee's injury, Tennessee Code Annotated section 50-6-124 provided, in part:

(a) The commissioner of labor and workforce development shall establish a system of utilization review of selected outpatient and inpatient health care providers to employees claiming benefits under the Workers' Compensation Law . . . by providers qualified pursuant to law or the utilization review accreditation commission.
. . . .
(d) Nothing in this section shall prevent an employer from electing to provide utilization review; however, if the employee, provider or any other party not contractually bound to the employer's utilization review program disagrees with that employer's utilization review, then that employee, provider or other party shall have recourse to the commissioner's utilization review program . . . .

Tenn. Code Ann. § 50-6-124 (1999 and Supp. 2003).

the records and his opinion that certain treatment proposed by Dr. Workman was not appropriate[.]

The trial court ruled that Dr. Hazlewood "sufficiently rebutted the presumption that the treatment in dispute prescribed by [Dr. Workman was] reasonable and necessary, and therefore, [that] it [was] not appropriate to compel the Employer to authorize and pay for the trigger point injections, PNT's and aquatherapy."

We conclude that the evidence does not preponderate against the trial court's decision. Dr. Hazlewood reviewed the pertinent medical records and reports, and each physician in the utilization review process concluded that trigger point injections, PNT, and aquatic therapy were not medically reasonable or necessary. These conclusions were supported by detailed findings. For example, with respect to trigger point injections, Dr. Wilson determined that "[c]urrent clinical guidelines do not endorse the repeated use of trigger point injections as the primary mode of treatment for myofascial syndrome." With respect to PNT, Dr. Pemmaraju determined that PNT was unproven for long-term pain management and that there were no objective findings with regard to the Employee's low back pain to justify the need for PNT. Finally, Dr. Molette concluded that aquatic treatment is typically reserved for patients with severe arthritis or patients who need exercises that require minimal weight bearing. Given that Dr. Hazlewood considered the utilization review records, as well as Employee's medical records provided by Dr. Workman, we disagree with Employee's argument that Dr. Hazlewood simply provided a conclusory affidavit that lacked support.

Employee relies on *Harville v. Emerson Electric Co.*, No. W2010-01011-WC-R3-WC, 2011 WL 11745136 (Tenn. Workers' Comp. Panel July 6, 2011), for the proposition that the presumption in favor of the authorized treating physician's recommendation cannot be rebutted by the affidavit of a non-treating physician. In *Harville*, a treating physician's recommendation for an electromyogram ("EMG") and nerve conduction study to treat the employee's carpal tunnel syndrome was denied by a utilization review provider due to the physician's failure to try conservative treatment, such as splinting, restrictions, medications, and physical therapy. *Harville*, 2011 WL 11745136, at *1. In response, the treating physician opined that the guidelines promulgated by the American Academy of Orthopedic Surgeons did not require such conservative treatment for carpal tunnel syndrome. *Id.* at *2. The trial court ordered the employer to authorize the treatment after finding that it was reasonably necessary. *Id.* The trial court considered the deposition testimony of the treating physician and a letter from the utilization review physician, Dr. Andrew Cole. *Id.* at *5. In upholding the trial court's decision, the Special Workers' Compensation Appeals Panel noted that, whereas the treating physician's opinion was presented by deposition, in which he explained his reasoning and was subjected to cross-examination, Dr. Cole's opinion "was expressed in a letter placed into evidence as an exhibit." *Id.* Contrasting this with the treating physician's opinion, the panel stated that Dr. Cole did not actually examine the employee,

8

that it was unclear what records or other information Dr. Cole reviewed in forming his opinion, and that Dr. Cole was not subjected to cross-examination. *Id.*

Employee argues that Dr. Hazlewood's affidavit cannot overcome the presumption afforded to Dr. Workman. However, Employee reads *Harville* too broadly, as *Harville* does not stand for the proposition that the presumption afforded to a treating physician's opinion can only be overcome by a physician who has examined the employee and whose opinions have been subject to cross-examination. While these may be factors for the trial court to consider, they may not be dispositive in every case. In the present case, unlike *Harville*, the record reflects that Dr. Hazlewood considered all of the pertinent records, including both the utilization review decisions and the opinions of Dr. Workman. Thus, we find Employee's reliance on *Harville* to be misplaced.

*Attorney's Fees and Bad Faith Penalty*

Having determined that the trial court did not err in denying Employee's motion to compel medical benefits, we necessarily conclude that the trial court did not err in denying attorney's fees or refusing to impose a bad faith penalty.

**Conclusion**

For the foregoing reasons, the trial court's judgment is affirmed. Costs are assessed to Douglas Brent Walker and his surety, for which execution shall issue if necessary.

_____
KRISTI M. DAVIS, SPECIAL JUDGE

9

# IN THE SUPREME COURT OF TENNESSEE
## SPECIAL WORKERS' COMPENSATION APPEALS PANEL
### AT KNOXVILLE

## DOUGLAS BRENT WALKER v. G.UB.MK CONSTRUCTORS

**Circuit Court for Knox County**
**No. 256105**

_____

**No. E2015-00346-SC-R3-WC-FILED-MAY 2, 2016**

_____

## JUDGMENT ORDER

This case is before the Court upon the entire record, including the order of referral to the Special Workers' Compensation Appeals Panel, and the Panel's Memorandum Opinion setting forth its findings of fact and conclusions of law, which are incorporated herein by reference.

Whereupon, it appears to the Court that the Memorandum Opinion of the Panel should be accepted and approved; and

It is, therefore, ordered that the Panel's findings of fact and conclusions of law are adopted and affirmed, and the decision of the Panel is made the judgment of the Court.

Costs on appeal are taxed to Douglas Brent Walker and his surety, for which execution may issue if necessary.

It is so ORDERED.

PER CURIAM